[Cite as *State v. Lipkins*, 2017-Ohio-4085.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | No. 16AP-616 |
| | | (M.C. No. 2016 CRB 9182) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Corey Lipkins, Jr. , | : | |
| Defendant-Appellant. | : | |

### D E C I S I O N

### Rendered on June 1, 2017

**On brief:** *Richard C. Pfeiffer, Jr.*, City Prosecutor, *Melanie R. Tobias*, and *Orly Ahroni*, for appellee. **Argued:** *Orly Ahroni.*

**On brief:** *Yeura Venters*, Public Defender, and *Timothy E. Pierce.* **Argued:** *Timothy E. Pierce.*

APPEAL from the Franklin County Municipal Court

LUPER SCHUSTER, J.

{¶ 1} Defendant-appellant, Corey Lipkins, Jr., appeals from a judgment entry of the Franklin County Municipal Court finding him guilty of one count of assault and one count of disorderly conduct. For the following reasons, we affirm.

### I. Factual and Procedural History

{¶ 2} On April 26, 2016, plaintiff-appellee, State of Ohio, obtained an arrest warrant for Lipkins and charged him with one count of assault in violation of R.C. 2903.13(A), a first-degree misdemeanor. The state additionally charged Lipkins with one count of disorderly conduct in violation of R.C. 2317.11(A), a fourth-degree misdemeanor. The charges related to an altercation Lipkins had on April 23, 2016 with the victim, Andrew Wells. Lipkins entered a plea of not guilty and requested a jury trial.

{¶ 3}   At the trial commencing July 25, 2016, Wells testified that he and Lipkins were both students at The Ohio State University, and they met in August 2015 when Wells moved into a five-bedroom house located at Chittenden Avenue in which Lipkins was one of the four other occupants.  All five occupants of the house had their own bedrooms.

{¶ 4}   Wells testified that he worked as a bus driver for the Campus Area Bus Service.  Due to "lack of finances," Wells testified he took a semester off school but that he had since been reactivated as a student.  (Tr. at 180.)  Wells said that Lipkins frequently disparaged and insulted him, attempting to make Wells feel inferior because Lipkins was an active student and Wells was only a bus driver, noting Lipkins frequently rode the bus that Wells drove.  Because of their contentious relationship, Wells said eventually he stopped trying to be personable or engage with Lipkins at all.

{¶ 5}   Each of the five roommates paid $450 monthly in rent, due on the first of each month, and they made their payments through an online service that allowed the roommates to view who had paid rent, in what amount, and the date it was paid.  Wells testified that on several occasions Lipkins did not pay his portion of the rent.  On April 20, 2016, the five roommates received a group email from their landlord stating Lipkins "has yet to pay [the April] rent.  This is in direct violation of the lease.  Please pay the balance along with the late fee in the next 24 hours to avoid eviction proceedings."  (Tr. at 189.)  Upon receiving the email, Wells testified he sent a group text message to all five roommates but directed at Lipkins, telling Lipkins plainly that he needed to pay his rent immediately to avoid eviction proceedings.  Lipkins responded by saying he had "taken care of the situation" by talking to the landlord, but Wells responded that he was skeptical that Lipkins' account was true.  (Tr. at 192.)  Lipkins then responded by telling Wells he was not an important party and that Wells "could go F off."  (Tr. at 193.)

{¶ 6}   On April 21, 2016, after the 24-hour grace period allowed by the landlord had passed, Wells checked the online system and discovered Lipkins still had not paid his rent.  Wells testified he knocked on Lipkins' bedroom door repeatedly but that Lipkins initially ignored him.  When Lipkins eventually opened his door, Wells testified that the two began arguing about Lipkins' nonpayment of rent.  Wells testified that Lipkins told him to "F off" and made "a sudden movement to slam the door."  (Tr. at 199.)  Wells said he was caught off guard and the door hit him in the head, causing him to fall into Lipkins'

bedroom, landing on his hands and knees.  While he was still crouched on the ground, Wells said someone pulled him up by his neck and placed him in a chokehold.  Wells said he did not know anyone else was in the room with Lipkins until that moment.  Wells also said the chokehold was "extremely painful" and he felt as though he was having difficulty breathing.  (Tr. at 200.)

{¶ 7}  While he remained in a chokehold, Wells said Lipkins began swinging his fists at Wells' face.  Wells said he fell backwards onto the bed, landing so that the person who had him in a chokehold was pinned underneath him and that Lipkins climbed on top of Wells and continued to punch Wells in the face.  Wells said he lost consciousness at some point during the altercation and that the pressure around his neck caused him to vomit.  Wells testified that Lipkins screamed profanities at him while he was attacking him.  Using "all of [his] energy," Wells said he was able to break free from the person holding him to the bed and that Lipkins fell off of Wells.  (Tr. at 202.)  Wells said he immediately told Lipkins he was going to call the police but that Lipkins "ripped" the phone out of Wells' hand and threw it across the room.  (Tr. at 204.)

{¶ 8}  After retrieving his phone, Wells said he was able to use social media to identify the other person in the room with Lipkins as Terrance Hopewell.  When he left Lipkins' bedroom, Wells said he realized his face was bleeding, and he used his phone to see bruises and abrasions on his face.  His eyeglasses broke during the attack.  Wells testified that Lipkins and Hopewell left the house because of Wells' statement that he intended to call the police.  As soon as Lipkins and Hopewell left the house, Wells called the police.  The police arrived a short time later and took a report of the incident.  Wells testified he did not seek medical treatment right away for his injuries because he was worried about the potential cost and did not want his mother to worry about him.  Two days after the incident, Wells said he went to the hospital because of a bad headache where doctors performed an MRI scan.  Wells said he missed several days of work due to his injuries.

{¶ 9}  Wells further testified that immediately after the assault, Lipkins posted a video of himself on the social media site Snapchat in which Lipkins boasted about beating up Wells.  In the video, Lipkins states "Do you remember that roommate bus driver of mine * * *?  I just beat that motherfucker's ass.  Kicked his face in.  And you know me, I'm

a teddy bear.  People got to stop fucking with me though.  It's just not a good idea.  One person can only take so much."  (State's Ex. E.)  Wells testified he viewed the video on a friend's phone the day after the assault.

{¶ 10} Hopewell also testified, stating he was in Lipkins' room on April 23, 2016 because he was in a sexual relationship with Lipkins.  Hopewell said he heard loud knocking on the bedroom door and he "believe[d] the door actually came open a little bit," either because "the lock broke or * * * it just came unhinged because of the knocking." (Tr. at 282.)  Hopewell testified that when Lipkins answered the door, Lipkins and Wells began arguing about the payment of rent.  According to Hopewell, when Lipkins attempted to close the bedroom door, Wells tackled Lipkins and the two men began to fight on the floor.  Hopewell testified he got up from the bed and placed Wells in a chokehold "[i]n order to defend" Lipkins.  (Tr. at 284.)  Hopewell described falling backwards on the bed with Wells still in a chokehold, and he said both Wells and Lipkins were trying to hit each other.  After attempting to diffuse the situation, Hopewell said he let Wells go and Wells got up to look for his phone.  Hopewell testified that Wells and Lipkins continued to verbally argue until Hopewell left the house with Lipkins.  On cross-examination, Hopewell estimated he had Wells restrained in a chokehold for 65 seconds.

{¶ 11} Lipkins testified in his own defense.  He stated that on April 23, 2016, he was in his bedroom with Hopewell when he heard a loud banging and shouting at his locked bedroom door.  Lipkins said that as soon as he approached the door, "it came open."  (Tr. at 325.)  Lipkins testified he and Wells began arguing about the payment of rent and that when Lipkins tried to close the bedroom door, Wells "lunged" at him and tried to attack him.  (Tr. at 326.)  At that point, Lipkins said Hopewell restrained Wells and fell back onto the bed with him, and Lipkins further stated that after Wells was restrained, Lipkins "did try to continue to hit him."  (Tr. at 327.)  On cross-examination, Lipkins agreed he could have left the room once Hopewell had Wells restrained, but he decided to climb on top of Wells and hit him with his fists several times.

{¶ 12} Lipkins also described a second fight that occurred after Hopewell released Wells from the bed.  According to Lipkins' testimony, instead of leaving the bedroom, Wells charged at Lipkins again and he ended up on the floor with Wells on top of him. Lipkins said this caused Hopewell to restrain Wells a second time.  On cross-examination,

Lipkins agreed that neither Wells nor Hopewell described a second altercation in their testimony. Lipkins also denied hearing Wells say he was going to call the police. After he left the house, Lipkins said he stopped at a convenience store where he recorded the Snapchat video to "vent" about the situation with Wells. (Tr. at 332.)

{¶ 13} At the close of evidence, the trial court instructed the jury on the assault and disorderly conduct charges as well as the affirmative defense of self-defense. Following deliberations, the jury returned guilty verdicts on both the assault and disorderly conduct charges. At the sentencing hearing, the trial court sentenced Lipkins only on the assault charge, imposing a 180-day jail sentence with 164 days suspended and 11 days of jail-time credit, as well as a two-year period of probation. The trial court journalized Lipkins' conviction and sentence in an August 31, 2016 sentencing entry. Lipkins timely appeals.

## II. Assignments of Error

{¶ 14} Lipkins assigns the following errors for our review:

[1.] The appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution was undermined and plain error occurred when inflammatory and unfairly prejudicial evidence was presented to the jury in violation of Ohio Evid.R. 401, 403(A), 404(A), 404(B), 608(A), 608(B), and R.C. 2945.59.

[2.] The appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution was undermined when the City prosecutors misstated the law regarding self-defense which rose to prosecutorial misconduct.

[3.] Appellant's right to a fair trial under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Sections 1, 10, and 16 of the Ohio Constitution was undermined and plain error occurred when the lower court failed to instruct the jury regarding the presumption under R.C. 2901.05(B)(1) and 2901.09(B) that a person acts in self-defense when attempting or expelling another unlawfully present in his residence and that the government bears the burden of overcoming this presumption by a preponderance of the evidence.

[4.] The jury's verdict was not supported by the manifest weight of the evidence.

## III.  First Assignment of Error – "Other Acts" and Character Evidence

{¶ 15} In his first assignment of error, Lipkins argues the trial court erred when it permitted Wells to testify regarding Lipkins' alleged prior acts.  Lipkins asserts the state offered this testimony to prove he acted in conformity with his bad character, an impermissible basis to admit evidence of other acts under Evid.R. 404(B).

{¶ 16} Generally, the admission or exclusion of evidence lies within the sound discretion of the trial court, and we will not disturb that decision absent an abuse of discretion.  *State v. Darazim*, 10th Dist. No. 14AP-203, 2014-Ohio-5304, ¶ 16, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001).  An abuse of discretion implies that the court's attitude was unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶ 17}  Evid.R. 404(B) states "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."  Such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."  Evid.R. 404(B).  Lipkins points to three instances in Wells' testimony in which he asserts Wells offered evidence of Lipkins' alleged bad character: (1) Wells' assertions that Lipkins had lied to him in a text message and that Lipkins "lie[s] all the time" to all the roommates; (2) Wells' accusations that Lipkins "stole from" the other tenants and that Lipkins had committed acts of petty theft; and (3) Wells' description of Lipkins as a "nasty" person who routinely did not pay rent and who was generally unpleasant to be around.  (Tr. at 192, 187, 188.)  Lipkins argues the state impermissibly used this testimony to undermine Lipkins' credibility and to establish Lipkins acted in accordance with his bad character.

{¶ 18} Here, Lipkins concedes he did not object to the contested testimony at trial and thus has waived all but plain error.  "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Pilgrim*, 184 Ohio App.3d 675, 2009-Ohio-5357, ¶ 58 (10th Dist.), citing *State v. Saleh*, 10th Dist. No. 07AP-431, 2009-Ohio-1542, ¶ 68.  For an error to be "plain error"

under Crim.R. 52(B), it must satisfy three prongs: (1) there must be an error, meaning a deviation from a legal rule, (2) the error must be "plain," meaning an "obvious" defect in the trial proceedings, and (3) the error must have affected "substantial rights," meaning the error must have affected the outcome of the trial. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002).

{¶ 19} The Supreme Court of Ohio has set out a three-step analysis for the admission of "other act" evidence: (1) whether the other act evidence is relevant under Evid.R. 401; (2) whether the evidence is presented to prove a permissible purpose, such as those listed in Evid.R. 404(B), or whether it is presented to prove the character of the accused to show conformity therewith; and (3) whether the danger of unfair prejudice under Evid.R. 403 substantially outweighs the probative value of the other act evidence. *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 20.

{¶ 20} Lipkins fails to demonstrate any error, much less plain error, from the admission of these portions of Wells' testimony. As this court has previously noted, "relevant, intrinsic evidence related to the motive for the altercation" is "not 'other acts' evidence, and thus its admission is not subject to Evid.R. 404(B)." *State v. Fowler*, 10th Dist. No. 15AP-1111, 2017-Ohio-438, ¶ 21 (holding evidence that the defendant had previously stolen and used the victim's mother's ID was evidence intrinsic to the crime and thus admissible). The testimony Lipkins highlighted relates to the hostile nature of the relationship between Lipkins and Wells. As such, the testimony relates to Lipkins' motive for the altercation with Wells. *Id.* We additionally noted in *Fowler* that "other acts" evidence under Evid.R. 404(B) " 'may be admissible so long as the evidence is admitted for any proper purpose other than proving the defendant's propensity to act [in] conformity with a particular trait of his character.' " *Id.*, quoting *State v. Rocker*, 10th Dist. No. 97APA10-1341 (Sept. 1, 1998). Here, as in *Fowler*, the state made no effort to prove that Lipkins was acting in conformity with the alleged past conduct of lying to and stealing from his roommates. Additionally, we do not agree with Lipkins that the danger of unfair prejudice substantially outweighs the probative value of the evidence tending to show the animosity between Lipkins and Wells leading up to the altercation. Thus, we conclude the trial court properly admitted these portions of Wells' testimony.

{¶ 21} As Lipkins is unable to demonstrate error, let alone plain error, from the trial court's admission of this testimony, we overrule his first assignment of error.

## IV.   Second Assignment of Error – Prosecutorial Misconduct

{¶ 22} In his second assignment of error, Lipkins argues the prosecutor made remarks during the closing argument amounting to prosecutorial misconduct.   More specifically, Lipkins asserts the prosecutor twice misstated the law related to non-deadly force self-defense during closing arguments.

{¶ 23} Courts afford prosecutors wide latitude in closing arguments, and prosecutors may draw reasonable inferences from the evidence at trial, commenting on those inferences during closing argument.  *State v. Hunt*, 10th Dist. No. 12AP-1037, 2013-Ohio-5326, ¶ 18.  The test for prosecutorial misconduct in closing arguments "is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant."  *State v. Smith*, 14 Ohio St.3d 13, 14 (1984), citing *United States v. Dorr*, 636 F.2d 117 (5th Cir.1981).  " '[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor.' "  *State v. Wilkerson*, 10th Dist. No. 01AP-1127, 2002-Ohio-5416, ¶ 38, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982).  Thus, prosecutorial misconduct is not grounds for reversal unless the defendant has been denied a fair trial.  *State v. Maurer*, 15 Ohio St.3d 239, 266 (1984).  Moreover, because Lipkins did not object to the alleged instances of prosecutorial misconduct, Lipkins has waived all but plain error.  *State v. Daniels*, 10th Dist. No. 14AP-326, 2015-Ohio-2649, ¶ 29, citing *State v. Cunningham*, 105 Ohio St.3d 197, 2004-Ohio-7007, ¶ 82.  Under a plain error standard, a reviewing court asks whether a defendant " 'would not have been convicted in the absence of the improper conduct.' "  *State v. Elson*, 10th Dist. No. 13AP-554, 2014-Ohio-2498, ¶ 43, quoting *Saleh* at ¶ 68.

{¶ 24} Lipkins points to two instances of alleged prosecutorial misconduct.  The first occurred when the prosecutor stated during the closing argument that Lipkins "had the chance to leave the room."  (Tr. at 372-73.)  The second instance occurred when the prosecutor stated during the closing argument rebuttal:

> Now, is that self-defense?  If a person is in a defenseless position, is it reasonable to believe that you still are in imminent danger of bodily harm?  There was no one stopping

> [Lipkins] from leaving the room.  He could have easily got up
> from the door that he testified was open and left.

(Tr. at 387.)   Lipkins asserts both of these statements demonstrate the prosecutor "strongly impl[ied]" that Lipkins violated a duty to retreat.  (Lipkins Brief at 46.)

{¶ 25} Pursuant to R.C. 2901.09(B), "a person who lawfully is in that person's residence has no duty to retreat before using force in self-defense."  Thus, Lipkins is correct that there is no duty to retreat from one's residence before using force in self-defense.  However, considering the prosecutor's statements in context, the prosecutor did not "strongly impl[y]" that Lipkins had violated a non-existent duty to retreat, as Lipkins argues.  Instead, the prosecutor, through those statements, argued Lipkins did not act in self-defense because Lipkins used force *after* the threat of imminent danger had dissipated.  The overwhelming evidence at trial was that Lipkins repeatedly punched Wells in the face while Wells was restrained.  The remarks also seem intended to question Lipkins' credibility regarding the amount of danger he reasonably believed himself to be in.   Thus, we do not find the prosecutor's statements to be improper here.

{¶ 26} Because the prosecutor's comments were not improper, they did not operate to render Lipkins' trial unfair.  Accordingly, we overrule Lipkins' second assignment of error.

## V.  Third Assignment of Error – Jury Instructions

{¶ 27} In his third assignment of error, Lipkins argues the trial court erred when it instructed the jury on self-defense.  More specifically, Lipkins asserts the trial court should have instructed the jury on the presumption of self-defense contained in R.C. 2901.05(B)(1) and on the no duty to retreat contained in R.C. 2901.09(B).

{¶ 28} Ordinarily, the trial court has discretion to decide to give or refuse a particular instruction, and an appellate court will not disturb that decision absent an abuse of discretion.  *State v. Teitelbaum*, 10th Dist. No. 14AP-310, 2016-Ohio-3524, ¶ 127.  Here, however, the parties agree that Lipkins did not request an instruction premised on R.C. 2901.05(B)(1) and 2901.09(B) at trial and thus has waived all but plain error.  *Id.* at ¶ 99, citing *State v. Cook*, 65 Ohio St.3d 516, 527 (1992).

### A. R.C. 2901.05(B)

{¶ 29} First, Lipkins argues the trial court should have instructed the jury that he was presumed to have acted in self-defense because the altercation occurred in his residence. R.C. 2901.05(B), sometimes referred to as the "Castle Doctrine," provides:

> (1) Subject to division (B)(2) of this section, a person is presumed to have acted in self defense or defense of another when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence or vehicle occupied by the person using the defensive force.
>
> (2)
>
> (a) The presumption set forth in division (B)(1) of this section does not apply if the person against whom the defensive force is used *has a right to be in, or is a lawful resident of, the residence* or vehicle.

(Emphasis added.) R.C. 2901.05(B). The statute defines "residence" to mean "a dwelling in which a person resides either temporarily or permanently or is visiting as a guest." R.C. 2901.05(D)(3). Under the plain language of the statute, then, the presumption of self-defense would not apply here because both Lipkins and Wells had a right to be inside the residence.

{¶ 30} Despite the plain language of the statute, Lipkins argues the presumption of self-defense nonetheless applies here because he asserts Wells tried to enter his bedroom without a privilege to do so and, thus, the Castle Doctrine should apply to that situation. Lipkins relies on this court's decision in *State v. Fisher*, 10th Dist. No. 95APA04-437 (Mar. 12, 1996), for the proposition that a rented room constitutes a private residence entitled to the Castle Doctrine presumption.

{¶ 31} However, Lipkins' reliance on *Fisher* is misplaced. In *Fisher*, we noted that a rented room in someone else's residence that is kept locked at all times constituted the defendant's own residence. *Id.* Here, the evidence indicates all five roommates had separate bedrooms but shared the rest of the house as common areas. Moreover, even if we were to agree with Lipkins that his bedroom constituted his own, private residence, we

note that there was conflicting evidence as to whether Wells entered Lipkins' room without permission. While Lipkins testified that Wells entered his room without permission, Wells testified Lipkins opened his bedroom door and that, after a verbal exchange, Lipkins slammed the door on Wells, hitting Wells in the head and causing Wells to fall into the bedroom. Hopewell offered yet another version of events, testifying that the door came open while Wells was knocking. Additionally, by Lipkins' own testimony, Lipkins continued to attack Wells after Wells was restrained and no longer posed a potential threat to his safety. *See State v. Clellan*, 10th Dist. No. 09AP-1043, 2010-Ohio-3841, ¶ 24-25 (where there is conflicting evidence regarding whether the defendant was in his vehicle at all times, the jury properly could refuse to apply the Castle Doctrine presumption of self-defense). Thus, Wells does not demonstrate plain error from the trial court not instructing the jury on the Castle Doctrine.

### B. R.C. 2901.09(B)

{¶ 32} Lipkins next argues under this assignment of error that the trial court should have instructed the jury that he had no duty to retreat. As we stated in our resolution of Lipkins' second assignment of error, R.C. 2901.09(B) provides that a person inside his or her own residence has no duty to retreat before using force in self-defense. While we agree with Lipkins that such an instruction arguably would have been appropriate here, Lipkins does not demonstrate prejudice sufficient to render the omission of the instruction plain error.

{¶ 33} The Supreme Court has held that even where "a special instruction from the trial court on appellant's duty to retreat would have been appropriate to the evidence adduced at trial," there is no plain error from the omission of that instruction where the "failure to give such an instruction neither affected appellant's substantial rights nor contributed to his conviction." *State v. Jackson*, 22 Ohio St.3d 281, 285 (1986). Instead, where "the jury simply rejected appellant's theory of self-defense," namely, the jury concluded that appellant had not demonstrated the element of self-defense that required the appellant to prove he had a bona fide belief that he was in imminent danger of death or great bodily harm, the appellant is unable to demonstrate plain error from the trial court's failure to provide an instruction on the duty to retreat. *Id.* at 284-85.

{¶ 34} Here, as in *Jackson*, given the conflicting testimony of Wells and Lipkins, the jury could reasonably conclude that Lipkins did not act in self defense. As such, we find no plain error in the trial court's failure to provide an instruction on the duty to retreat. *Jackson* at 285; *see also State v. Parks*, 10th Dist. No. 11AP-98, 2011-Ohio-4056, ¶ 26 (no plain error in trial court's failure to instruct the jury that the defendant had no duty to retreat from her home because the jury could have reasonably concluded from the evidence presented at trial that the defendant did not act in self-defense). Accordingly, we overrule Lipkins' third assignment of error.

## VI. Fourth Assignment of Error – Manifest Weight of the Evidence

{¶ 35} In his fourth and final assignment of error, Lipkins argues his convictions are against the manifest weight of the evidence. We disagree.

{¶ 36} When presented with a manifest weight argument, an appellate court engages in a limited weighing of the evidence to determine whether sufficient competent, credible evidence supports the jury's verdict. *State v. Salinas*, 10th Dist. No. 09AP-1201, 2010-Ohio-4738, ¶ 32, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 42 (1982). Determinations of credibility and weight of the testimony are primarily for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Thus, the jury may take note of the inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67 (1964).

{¶ 37} An appellate court considering a manifest weight challenge "may not merely substitute its views for that of the trier of fact, but must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Harris*, 10th Dist. No. 13AP-770, 2014-Ohio-2501, ¶ 22, citing *Thompkins* at 387. Appellate courts should reverse a conviction as

being against the manifest weight of the evidence only in the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

{¶ 38} Lipkins argues the jury clearly lost its way in determining he did not act in self-defense. Essentially, Lipkins asks this court to believe only his testimony and ignore the contradictory version of events contained in Wells' testimony.

{¶ 39} Initially, we note the presence of conflicting testimony does not render a verdict against the manifest weight of the evidence. *Raver* at ¶ 21. Additionally, Lipkins' argument presupposes the jury found him to be a credible witness and believed his testimony while disbelieving Wells' version of events. However, a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version. *State v. Gale*, 10th Dist. No. 05AP-708, 2006-Ohio-1523, ¶ 19. As we noted above, the trier of fact remains free to believe "all, part, or none of a witness's testimony." *Raver* at ¶ 21.

{¶ 40} Given that Wells testified in great detail about the attack, that Lipkins admitted to continuing to punch Wells in the face while Wells was restrained, and that Lipkins posted a video to social media immediately following the attack in which he boasted about assaulting Wells, the jury did not clearly lose its way in discounting Lipkins' testimony that he acted in self-defense. In light of the evidence discussed above, as well as the record in its entirety, we agree with the jury's decision to discount the self-serving portions of Lipkins' testimony in favor of the other evidence at trial indicating Lipkins was the aggressor. Accordingly, Lipkins' convictions are not against the manifest weight of the evidence. We overrule Lipkins' fourth and final assignment of error.

## VII. Disposition

{¶ 41} Based on the foregoing reasons, the trial court did not plainly err in its evidentiary rulings, in determining whether there was prosecutorial misconduct, or in instructing the jury. Additionally, the manifest weight of the evidence supports Lipkins' convictions. Having overruled Lipkins' four assignments of error, we affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and BRUNNER, JJ., concur.