[Cite as *State v. Simpson*, 2019-Ohio-2912.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 107407 |
| v. | : | |
| NATHANIEL SIMPSON, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** July 18, 2019

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-621424-A

*Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly Needham, Assistant Prosecuting Attorney, *for appellee.*

Joseph V. Pagano, *for appellant.*

EILEEN T. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Nathaniel Simpson, appeals from his convictions following a bench trial. He raises the following assignments of error for review:

1. The trial court erred when it denied Simpson's motion for acquittal under Crim.R. 29 because the state failed to present sufficient evidence to establish beyond a reasonable doubt the elements necessary to support the convictions.

2. Simpson's convictions are against the manifest weight of the evidence.

3. The trial court erred by denying Simpson's motion for new trial.

4. Simpson was deprived of his constitutional rights to due process, a fair trial, and the effective assistance of counsel where he was not permitted to introduce evidence of his text messages with M.S. on July 3, 2017.

5. The trial court erred by ordering Simpson to have no contact with his daughter.

{¶ 2} After careful review of the record and relevant case law, we affirm Simpson's convictions.

## I. Factual and Procedural History

{¶ 3} In September 2017, Simpson was named in a three-count indictment, charging him with felonious assault in violation of R.C. 2903.11(A)(1); abduction in violation of R.C. 2905.02(A)(2); and domestic violence in violation of R.C. 2919.25(A). The indictment stemmed from allegations that Simpson physically assaulted his daughter, M.S., during an altercation inside Simpson's home. In May 2018, the matter proceeded to a bench trial, where the following evidence was adduced.

{¶ 4} M.S., who was 19 years old at the time of the incident, testified that in July 2017, she was temporarily living with Simpson during a two-week period he

was receiving chemotherapy treatment. M.S. stated that she assisted Simpson with "regular duties around the house" including grocery shopping and meal preparation. M.S. described her relationship with her father as "kind of rocky," but attributed their "deteriorated" relationship to being a side effect of his chemotherapy treatment.

{¶ 5} On July 3, 2017, M.S. visited her friends in Toledo, Ohio. M.S. testified that Simpson was upset she left for the weekend and began arguing with her through text messages. M.S. testified that she told her father that she would come to his home, collect her belongings, and return to her mother's home where she permanently resided.

{¶ 6} M.S. testified that when she arrived to Simpson's home, she and Simpson sat at the dining room table and had a conversation that lasted over one hour. M.S. stated that Simpson became more and more agitated during the conversation. M.S. testified that she had previously arranged for her cousin, Amhara Denson, to pick her up from Simpson's house. When Amhara arrived, she called M.S.'s cell phone and waited outside for 10-15 minutes before M.S. told her to leave because Simpson "was not letting me leave the house."

{¶ 7} M.S. testified that she then went into her bedroom to get the rest of her belongings and called a friend to see if she could get a ride to her mother's home. When her friend responded that she could not give M.S. a ride, M.S. told Simpson that she would just walk to her mother's home. M.S. testified that her comment triggered Simpson, and that he "went crazy" and "attacked [her]." M.S. testified that

Simpson "grabbed [her] by the [hair] and tossed [her] on the bed." While M.S. was on the bed, Simpson held her down by placing his knee on her back. When M.S. "rolled [her] body," she and Simpson fell to the floor. M.S. testified that she hit her head on the corner of a bookshelf when she fell to the floor. While on the floor, Simpson continued to restrain her. M.S. pleaded with Simpson to let her go, and when he did, she immediately went to her friend's house.

{¶ 8} After discussing the incident with her family members, M.S. went to the hospital on July 4, 2017, where she was diagnosed with a minor concussion, a minor neck sprain, and a back contusion. Photographs of M.S.'s injuries were presented to the trier of fact. Subsequently, M.S. filed a police report on July 5, 2017.

{¶ 9} Amhara Denson testified that on the day of the incident, M.S. asked her for a ride from Simpson's home. Denson testified that when she arrived at Simpson's home, M.S. indicated that she "was coming right out." After waiting for several minutes, Denson called M.S.'s cell phone. Denson testified that when M.S. answered her phone, she heard "scuffling" and heard M.S. "[tell] her father to get off of her." Denson testified that she also heard a male voice yelling. Denson stated that she eventually left Simpson's home without M.S. because she "kind of felt out of place in that predicament." Denson also testified that M.S. told her she "was okay."

{¶ 10} Detective Barry Bentley of Cleveland Police Department was assigned to investigate the allegations levied against Simpson. In the course of his investigation, Det. Bentley conducted a formal interview of M.S. and obtained a

warrant for Simpson's arrest. Once in custody, Simpson "admitted that there was a small confrontation" with M.S. because "he did not approve of the lifestyle that she was currently living" and "felt she was being unruly and also disrespectful." Det. Bentley further testified that Simpson admitted that "when [M.S.] attempted to go into the bedroom [he] grabbed her by her hair and attempted to push her out the house." Simpson also stated that "they both fell on the ground and [M.S.] fell on top of him."

{¶ 11} At the conclusion on the state's case, defense counsel made a Crim.R. 29 motion for acquittal. Following a brief discussion on the record, the trial court denied the motion. Simpson then testified on his own behalf. Contrary to M.S.'s testimony, Simpson testified that M.S. was not living with him at the time of the incident. Simpson stated that on July 3, 2017, he sent several text messages to M.S. indicating that she was not welcome to come to his home that day and "that she needed to go to her home where she lived with her mother." Simpson explained that he was weak from his chemotherapy treatments and did not want M.S. coming over "because she was doing some very, very serious things that could have gotten her put in jail." Simpson denied assertions that M.S. was taking care of him while he was undergoing chemotherapy. Simpson testified that M.S. was "forbidden" from coming to his home and that he took her house keys away from her approximately three months earlier.

{¶ 12} Regarding the incident, Simpson testified that he was asleep when he heard someone come into his house through the back door. When Simpson realized

that M.S. had broken into his house, he confronted her. Simpson stated that while he was "telling [M.S.] to get out," she was talking on her phone with a friend. Simpson testified that M.S. was laughing and stated that Simpson was "not going to do anything." At that time, Simpson "went to grab [M.S.]" to remove her from his home. Simpson testified that when he approached M.S., she "reached up as though she was going to punch me." In response, Simpson "reached up to try to grab her hair and her arm." Simpson explained that when M.S. "swung around," he and M.S. both fell to the ground. Simpson testified that M.S. fell on top of him and hit her head on the base of the bed. They fell a second time as they attempted to stand up. Simpson testified that he did not invite M.S. into his home, did not ask her to stay, and did not hinder her from leaving. He further testified that he did not knowingly cause serious physical harm to M.S.

{¶ 13} At the conclusion of trial, Simpson renewed his motion for acquittal, which the trial court denied. Thereafter, the trial court found Simpson guilty of all counts. Prior to sentencing, Simpson filed a motion for new trial. In its entirety, the motion argued Simpson was entitled to a new trial for the following reasons:

> 1. The court erred in denying the motion of the defendant for judgment of acquittal made at the end of the State's evidence and renewed at the conclusion of all evidence.
>
> 2. The verdict of the Court is contrary to the weight of the evidence.
> 3. The verdict is not supported by substantial evidence.
> 4. The defendant has new evidence that he was not aware of at the time of the alleged incident.

{¶ 14} A supplement to the motion for new trial incorporated unauthenticated photographs, unauthenticated medical records, unauthenticated phone records, unauthenticated court records, an unauthenticated police report, and sworn statements from Simpson, Simpson's sister, Simpson's brother, Simpson's step-daughter, and several of Simpson's close friends.

{¶ 15} In June 2018, the trial court imposed a two-year period of community control sanctions. As a condition of his community control supervision, the trial court ordered that Simpson have no contact with M.S. During the sentencing hearing, the trial court briefly discussed Simpson's motion for new trial, stating:

> I've reviewed all these documents [attached to the motion for new trial]. I don't think there's anything new here.
>
> * * *
>
> I made my decision based on evaluating the credibility of the witnesses and evaluating the evidence that was presented to me.
>
> * * *
>
> As such, I'm going to deny the motion for a new trial and we're going to proceed to sentencing.

Simpson now appeals from his convictions.

## II. Law and Analysis

### A. Sufficiency of the Evidence

{¶ 16} In his first assignment of error, Simpson argues his convictions are not supported by sufficient evidence.

{¶ 17} A Crim.R. 29 motion challenges the sufficiency of the evidence. When considering a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶ 18} The state may use direct evidence, circumstantial evidence, or both, in order to establish the elements of a crime. *See State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). Circumstantial evidence is "proof of facts or circumstances by direct evidence from which the trier of fact may reasonably infer other related or connected facts that naturally or logically follow." *State v. Seals,* 8th Dist. Cuyahoga No. 101081, 2015-Ohio-517, ¶ 32, citing *State v. Beynum*, 8th Dist. Cuyahoga No. 69206, 1996 Ohio App. LEXIS 2143 (May 23, 1996); *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37.

{¶ 19} Circumstantial evidence and direct evidence inherently possess the same probative value. *Jenks* at paragraph one of the syllabus. "[A]ll that is required of the [trier of fact] is that it weigh all of the evidence, direct and circumstantial,

against the standard of proof beyond a reasonable doubt." *Id.* at 272. "'Circumstantial evidence is not only sufficient, but may also be more certain, satisfying, and persuasive than direct evidence.'" *State v. Hawthorne*, 8th Dist. Cuyahoga No. 96496, 2011-Ohio-6078, ¶ 9, quoting *Michalic v. Cleveland Tankers, Inc.*, 364 U.S. 325, 330, 81 S.Ct. 6, 5 L.Ed.2d 20 (1960). And circumstantial evidence alone is sufficient to support a conviction. *State v. Coleman,* 8th Dist. Cuyahoga No. 102966, 2016-Ohio-297, ¶ 22.

{¶ 20} In this case, Simpson was convicted of felonious assault in violation of R.C. 2903.11(A)(1), abduction in violation of R.C. 2905.02(A)(2), and domestic violence in violation of R.C. 2929.25(A). R.C. 2903.11(A)(1), the statute prohibiting felonious assault, states that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." R.C. 2905.02(A)(2), which prohibits the crime of abduction, provides that "[n]o person, without privilege to do so, shall knowingly * * * [b]y force or threat, restrain the liberty of another person under circumstances that create a risk of physical harm to the victim or place the other person in fear[.]" Finally, R.C. 2929.25(A), the statute prohibiting domestic violence, provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member."

{¶ 21} Regarding the felonious assault conviction, Simpson argues the state failed to prove that he knowingly caused or attempted to cause serious physical harm to M.S. He further contends that the state failed to establish that M.S. sustained serious physical harm. Simpson's position relies on his testimony that, while he

grabbed M.S. by her hair, "any other physical contact between the two was the result of [Simpson's] belief that [M.S.] was trying to hit him." He further references M.S.'s testimony that she did not feel any pain during the incident and did not immediately seek medical assistance.

{¶ 22} "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Serious physical harm" includes "[a]ny physical harm that carries a substantial risk of death," "some temporary, serious disfigurement" or "involves any degree of prolonged or intractable pain." R.C. 2901.01(A)(5).

{¶ 23} After careful review, we find the state met its burden with respect to establishing that Simpson knowingly caused or attempted to cause serious physical harm to M.S. Here, M.S. testified that Simpson "attacked [her]" after she stated that she was going to walk to her mother's home. She stated that Simpson "grabbed me by [my hair] and tossed me on the bed, my stomach was on the bed and my head was flat and he was on top of me." M.S. testified that Simpson then placed his knee in her back while he pulled her hair, forcing her head back. M.S. subsequently hit her head on the corner of her bed when she and Simpson rolled off the bed and fell to the floor. Denson corroborated M.S.'s testimony, stating that while she was on the phone with M.S. she heard a tussle and heard M.S. say "get off me." In our view, a rational trier of fact would foresee that Simpson's acts of grabbing M.S. by the hair,

tossing her to the ground, and holding her down with his knee, would likely cause serious physical harm.

{¶ 24} In addition, M.S. testified that she sustained a minor concussion, a minor neck sprain, and a back contusion as a result of Simpson's conduct. She explained that Simpson pulled her hair so far backwards, she thought Simpson "could have broke [her] airway or something." M.S. further testified that she experienced pain for several days after the incident and continues to experience periodic pain and stiffness in her back. Given M.S.'s testimony and the admission of her medical records and photographs detailing the extent of her injuries, we find the state presented sufficient evidence for a reasonable trier of fact to conclude that M.S. suffered serious physical harm.

{¶ 25} With respect to his abduction conviction, Simpson argues "the state failed to prove that he knowingly restrained M.S.'s liberty for the purposes of inflicting any physical harm." Simpson contends that he was weak and recovering from chemotherapy treatments when M.S. entered his home without permission. Simpson states that "because he was in his home and M.S. did not have permission to be there, Simpson had privilege conferred by law to defend himself."

{¶ 26} To the extent Simpson contends his actions were privileged, we note that the record is devoid of any indication that Simpson raised the affirmative defense of self-defense at trial. The defense is therefore waived. *See State v. Catron*, 8th Dist. Cuyahoga No. 101789, 2015-Ohio-2697, ¶ 18. As discussed, the state presented testimony indicating that Simpson "attacked" M.S. and held her down

after he "tossed" her to the bed. M.S. testified that after she and Simpson fell off the bed, Simpson continued to "restrain [her] from moving" and that she was not free to leave at that point. In addition, M.S. testified that she was afraid while the incident was occurring, and "thought [she] was going to die." Under these circumstances, we find the state presented sufficient evidence for a reasonable trier of fact to conclude that, without privilege to do so, Simpson knowingly restrained M.S. by force, created a risk of physical harm, and placed her in fear.

{¶ 27} Finally, Simpson argues there was insufficient evidence to sustain his domestic violence conviction because the state failed to prove that he knowingly caused or attempted to cause M.S. physical harm. Simpson does not dispute that M.S. is a family member, but reiterates his position that M.S. was trespassing at the time of the incident and that he only touched her in an effort to escort her out of his home. Again, we find no merit to Simpson's argument. Here, the state presented testimony that Simpson physically attacked M.S. following a verbal argument. M.S. testified that Simpson's conduct caused her to sustain a mild concussion and injuries to her face, neck, and back. Collectively, the evidence was sufficient to establish that Simpson knowingly caused M.S. physical harm, which is defined as "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 28} Viewing the evidence in a light most favorable to the state, we find Simpson's convictions were supported by sufficient evidence. Accordingly, the trial court did not err by denying Simpson's motion for acquittal.

{¶ 29} Simpson's first assignment of error is overruled.

## B. Manifest Weight of the Evidence

{¶ 30} In his second assignment of error, Simpson argues his convictions are against the manifest weight of the evidence.

{¶ 31} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered." *Thompkins*, 78 Ohio St.3d 388, 678 N.E.2d 541 (1997). A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶ 32} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The trier of

fact may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶ 33} In support of his manifest weight of the evidence argument, Simpson reiterates his position that M.S. was trespassing at the time of the incident and that he only "touch[ed] M.S.'s hair in defense of himself as the situation escalated." Simpson contends that he did not knowingly cause harm to his daughter and that M.S.'s version of the incident lacked credibility and "does not make sense." Simpson suggests that if M.S. was welcome in Simpson's house as M.S. testified, "why would he engage in any confrontation with her; especially in his medically fragile condition?" Simpson further references Denson's testimony that M.S. said she "was okay." He submits that if Denson believed M.S. was truly in danger based on the tussling noises she heard on the phone, "why wouldn't she have attempted to enter the house or at the very least call the police?"

{¶ 34} There is no dispute that Simpson and M.S. were the only individuals inside Simpson's home on the evening of the incident. Throughout trial, M.S. portrayed Simpson as a short-tempered individual who physically attacked her following a verbal argument. In contrast, Simpson portrayed M.S. as his defiant and ill-behaved daughter, who overpowered him when he confronted her about breaking into his home without permission. However, "'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version

of events over the defendant's version.'" *State v. Amey*, 8th Dist. Cuyahoga No. 105847, 2018-Ohio-4207, ¶ 23, quoting *State v. Lipkins*, 2017-Ohio-4085, ¶ 39, 92 N.E.3d 82 (10th Dist.). In this case, the court, as the trier of fact, was in the best position to weigh the credibility of the witnesses and was free to give M.S.'s version of the events more weight. Deferring to the trier of fact's credibility assessment, we are unable to conclude that the trier of fact lost its way and created such a manifest miscarriage of justice that a new trial is warranted.

{¶ 35} Simpson's second assignment of error is overruled.

### C. Motion for New Trial

{¶ 36} In his third assignment of error, Simpson argues the trial court committed reversible error when it denied his motion for new trial.

{¶ 37} Crim.R. 33 provides an avenue for a post-judgment attack on a valid criminal conviction. The rule provides for a number of situations where a criminal defendant may seek a new trial. Relevant to the arguments raised in this case, Crim.R. 33(A)(6) provides that a new trial may be granted:

> When new evidence material to the defense is discovered which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court may postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.

{¶ 38} Under Crim.R. 33(B), a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict. Crim.R. 33(B). If the 120-day time period has expired, as here, the defendant must first seek leave of the trial court to file a delayed motion for a new trial. *State v. Mathis*, 134 Ohio App.3d 77, 79, 730 N.E.2d 410 (1st Dist.1999).

{¶ 39} By its terms, Crim.R. 33 does not require a hearing on a motion for a new trial. Thus, the decision to conduct a hearing is one that is entrusted to the discretion of the trial court. *State v. Nunez*, 8th Dist. Cuyahoga No. 104917, 2017-Ohio-5581, ¶ 13, citing *State v. Smith*, 30 Ohio App.3d 138, 139, 506 N.E.2d 1205 (9th Dist.1986). The decision whether to grant a motion for a new trial also lies within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *State v. Schiebel*, 55 Ohio St.3d 71, 564 N.E.2d 54 (1990). An abuse of discretion indicates that the trial court's ruling was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 40} In this case, Simpson filed his motion for a new trial 14 days after the verdict was rendered against him. Regarding the grounds for his motion for a new trial, Simpson argues he has "presented additional evidence that would support a conclusion that [he] was not guilty of the charges against him." He contends that the relevant police reports, court records, medical records, and sworn statements substantiate his testimony regarding his poor medical health and M.S.'s tendency to lie. Simpson further maintains that the new evidence confirms that M.S. was not

living with Simpson and that Simpson told M.S. to not come to his home on the day of the incident. Thus, Simpson asserts that "the additional evidence supported a finding that M.S. had trespassed on his property, that he asked [M.S.] to leave [his home], and that he was defending himself [against M.S.]."

{¶ 41} In order to grant a motion for a new trial on the basis of newly discovered evidence, a defendant must show:

> the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence.

State v. Petro, 148 Ohio St. 505, 76 N.E.2d 370 (1947), paragraph one of the syllabus.

{¶ 42} The state does not dispute that Simpson's motion for new trial was timely filed pursuant to Crim.R. 33. However, the state challenges Simpson's characterization of the exhibits attached to his motion as being "newly discovered evidence." According to the state, "there was nothing in Simpson's 'newly discovered evidence' that was new or unable to be obtained at trial." Thus, the state asserts that the evidence presented by Simpson "did not disclose a strong possibility that it would change the result of a new trial if a motion for new trial is granted."

{¶ 43} After careful consideration, we find Simpson has failed to establish that, with reasonable diligence, the evidence attached to his motion for new trial could not have been discovered and produced at trial. A review of Simpson's motion for a new trial reveals that Simpson relies exclusively on unauthenticated records

and sworn statements that could have been discovered prior to May 2018. Simpson's brief on appeal is silent on this issue and he presents no information to suggest the evidence was unavailable at the time of trial. Significantly, the medical, police, and cell phone records submitted by Simpson correlated to incidents that occurred prior to, or contemporaneously with, the July 2017 altercation. Similarly, the friends and family members identified in Simpson's motion for a new trial did not aver that they were unavailable for trial. Nor is there any allegations that Simpson was prevented from discovering these individuals as potential defense witnesses prior to trial.

{¶ 44} In addition, we note that the cited evidence merely reiterated Simpson's testimony at trial that he was overpowered by his trespassing daughter. While the allegedly new evidence may have corroborated portions of Simpson's testimony, the evidence does not present new material information regarding the scope or nature of Simpson's role in the physical altercation. Rather, it is merely cumulative to the theory of the defense presented at trial. Under such circumstances, we are unable to conclude that the evidence attached to Simpson's motion disclosed a strong probability that the result of a new trial would be different.

{¶ 45} Based on the foregoing, we find the trial court did not abuse its discretion in denying Simpson's motion for a new trial without an evidentiary hearing. Simpson's third assignment of error is overruled.

### D. Ineffective Assistance of Counsel

{¶ 46} In his fourth assignment of error, Simpson argues defense counsel rendered ineffective assistance of counsel by failing to set forth the proper foundation for the introduction of text message correspondences between Simpson and M.S. on the day of the altercation.

{¶ 47} To establish ineffective assistance of counsel, a defendant must demonstrate that counsel's performance fell below an objective standard of reasonable representation and that he was prejudiced by that performance. *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice is established when the defendant demonstrates "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶ 48} In evaluating a claim of ineffective assistance of counsel, a court must be mindful that there are countless ways for an attorney to provide effective assistance in a given case, and it must give great deference to counsel's performance. *Id.* at 689. Trial tactics and strategies do not constitute a denial of effective assistance of counsel. *State v. Gooden*, 8th Dist. Cuyahoga No. 88174, 2007-Ohio-2371, ¶ 38, citing *State v. Clayton*, 62 Ohio St.2d 45, 402 N.E.2d 1189 (1980).

{¶ 49} Here, the record reflects that during Simpson's direct examination, he referenced a text message conversation he had with M.S. on the day of the altercation. Simpson testified that in the text messages, "he advised her not to come

to [his] house" because he was frustrated with decisions M.S. was making in her personal life. During Simpson's testimony, the state raised an objection to Simpson's continued reference to phone records that were not turned over to the state prior to trial. The trial court agreed that the state was entitled to view the records before trial, and therefore, the phone records were not introduced into evidence.

{¶ 50} On appeal, Simpson argues defense counsel rendered ineffective assistance of counsel by (1) failing to seek a continuance in order to ensure the state was presented with a copy of the records prior to trial, and (2) by failing to "mark or proffer the content of the text messages for purposes of the record and review." Simpson further contends that he was prejudiced by counsel's performance and his inability to introduce evidence establishing that he told M.S. not to come to his home on July 3, 2017.

{¶ 51} As noted in Simpson's appellate brief, this court is unable to review the substance of the challenged phone records because they are not part of this record. Thus, we are left to speculate as to whether the referenced text message conversation may have contained damaging information that defense counsel did not wish to introduce into evidence as part of a trial strategy. Nevertheless, even if this court were to conclude that defense counsel's failure to secure and produce the subject phone records for trial amounted to deficient performance, we find Simpson is unable to demonstrate that he was prejudiced. Although the text message conversation was not introduced at trial, Simpson offered extensive testimony

concerning the substance of the conversation, including his directive to M.S. that she was not welcome to come to his home on the day of the incident. Viewing the evidence presented at trial in its entirety, we are unable to conclude that there is a reasonable probability that the result of the proceeding would have been different had the phone records been introduced at trial. While Simpson contends that the text messages would corroborate his testimony that M.S. was trespassing in his home at the time of the altercation, the phone records would not have been directly dispositive of M.S.'s allegations that Simpson physically attacked her following a verbal argument. Accordingly, we find Simpson has not established a meritorious claim for ineffective assistance of counsel.

{¶ 52} Simpson's fourth assignment of error is overruled.

### E. No-Contact Order

{¶ 53} In his fifth assignment of error, Simpson argues the trial court erred by ordering him to have no contact with M.S. Simpson contends that he loves his daughter, is battling cancer, and is capable of avoiding his daughter absent a court order "if that is her desire."

{¶ 54} We review the trial court's imposition of community control sanctions for an abuse of discretion. *State v. Cooper*, 2016-Ohio-8048, 75 N.E.3d 805, ¶ 31 (8th Dist.), citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10. Notwithstanding this broad discretion, the trial court's discretion "is not limitless." *State v. White*, 10th Dist. Franklin No. 14AP-1027, 2015-Ohio-3844, ¶ 5, citing *Talty* at ¶ 11.

{¶ 55} A court may impose additional community control conditions as long as those conditions are "not * * * overbroad and [are] reasonably relate[d] to the goals of community control: 'rehabilitation, administering justice, and ensuring good behavior.'" *State v. Mahon*, 8th Dist. Cuyahoga No. 106043, 2018-Ohio-295, ¶ 7, quoting *Talty*. To determine whether a condition of community control serves those purposes, "courts should consider whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990). A trial court does not abuse its discretion where all three prongs of the *Jones* test are satisfied. *Mahon* at ¶ 8, citing *White.*

{¶ 56} As stated, Simpson was convicted of felonious assault, domestic violence, and abduction. The offenses corresponded to acts committed against M.S. In our view, the no-contact condition of Simpson's community control sanctions has an obvious relationship to the crimes for which Simpson was convicted. The condition is also reasonably related to rehabilitating Simpson. Specifically, "'it is aimed at keeping him out of situations where he may be tempted to reoffend.'" *State v. Minarik*, 8th Dist. Cuyahoga No. 106326, 2018-Ohio-3586, ¶ 77, quoting *State v. Recker*, 3d Dist. Putnam Nos. 12-14-03 and 12-14-04, 2014-Ohio-4993, ¶ 18; *see also State v. Hultz*, 5th Dist. Ashland No. 06-COA-003, 2006-Ohio-4056, ¶ 14 ("The removal of appellant from places of temptation is related to promoting

rehabilitation and good behavior and deterring future criminality."). In addition, the condition relates to future criminality and serves the statutory ends of community control since the no-contact order will ensure that Simpson has no opportunity to engage with M.S. during the term of his community control. Finally, we find the no-contact order is not overly broad. The no-contact order is limited to the victim of the subject offenses and is fashioned in a manner that promotes the statutory ends of probation, such as rehabilitation, administering justice, and ensuring the offender's good behavior.

{¶ 57} Under the foregoing circumstances, we find the trial court did not abuse its discretion in fashioning a sentence that included a no-contact order that was designed to rehabilitate, administer justice, and ensure Simpson's good behavior.

{¶ 58} Simpson's fifth assignment of error is overruled.

{¶ 59} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
**EILEEN T. GALLAGHER, PRESIDING JUDGE**

**ANITA LASTER MAYS, J., and**
**FRANK D. CELEBREZZE, JR., J., CONCUR**