[Cite as *State v. Cooper*, 2016-Ohio-8048.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 104099**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEWAYNE COOPER

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-586732-A

**BEFORE:** Kilbane, P.J., Boyle, J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** December 8, 2016

**ATTORNEY FOR APPELLANT**

John B. Gibbons
55 Public Square - Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Daniel T. Van
Assistant County Prosecutor
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, P.J.:

{¶1} Defendant-appellant, Dewayne Cooper ("Cooper"), appeals from his convictions and sentence for failing to have a license and permit for a solid waste facility, open dumping, open burning, receiving stolen property, and possessing criminal tools. For the reasons set forth below, we affirm.

{¶2} In July 2014, Cooper was charged in a six-count indictment. Count 1 charged him with failing to have licenses and permits for a solid waste facility. Count 2 charged him with open burning. Count 3 charged him with open dumping. Counts 4 and 5 charged him with receiving stolen property. Count 6 charged him with possessing criminal tools.

{¶3} The matter proceeded to a bench trial, at which the following evidence was adduced.

{¶4} In February 2014, Paul Kuffari ("Inspector Kuffari"), a building inspector with the Cleveland Building and Housing Department, received a complaint about a property located at 7810 Colfax Road in Cleveland, Ohio. It was later determined that Cooper owned this property. Inspector Kuffari's investigation of the complaint revealed that the structure on the property was in "very bad shape." He described the structure as "a masonry building, one-story in height. Very dilapidated. Major part of the roof missing." Inspector Kuffari also stated that he observed several scrap vehicles, "plenty of tires," "settling tanks, wrecking and working on cars," and a barrel with a fire burning while on the property. He issued a combination of violation notices that condemned the

structure on the property. Inspector Kuffari further testified that Cooper did not have an occupancy permit for the property. Consequently, in July 2014, he issued an illegal use violation notice to Cooper "for illegally trying to establish auto wrecking yard, scrap yard" and "the storage of the tires."

{¶5} Cooper appealed the violation notice and was given three months to submit plans and an application for the proper permits. Cooper never followed through with the application. Once the three months lapsed, a summons was issued through housing court for his failure to remedy the violation notices.

{¶6} Inspector Kuffari testified that he did not issue a housing court citation to Cooper for the open burning. He further testified, however, that the focus of his investigation was the "building structure and condemnation."

{¶7} Cleveland Police Sergeant Andrew Ezzo ("Sergeant Ezzo") testified that he is the officer in charge of the environmental crimes task force, which investigates and prosecutes environmental crimes within Cuyahoga County. On April 28, 2014, Sergeant Ezzo responded to a call at an old auto repair shop at the intersection of East 79th Street and Union Avenue in Cleveland. On his way back to the office, he observed a fire through a fence surrounding a junkyard located at 7810 Colfax Road in Cleveland. He also observed a vehicle turned upside down on its roof, as well as, a building with a caved-in roof, a big excavator, and a big dumpster, which was filled with scrap metal and car parts. Sergeant Ezzo then called for assistance because he observed several males on the property.

{¶8} Once Sergeant Ezzo entered the property, he asked one of the males for the owner and was introduced to Cooper. Sergeant Ezzo inquired about the property and the fire. Cooper stated "he was just burning things to get rid of them." Sergeant Ezzo noticed that the fire originated from a 55-gallon drum with wood debris burning inside of it. Cooper also stated the property "was a junkyard and like a light auto repair shop." He asked Cooper to put out the fire. The fire continued to burn, so he called the fire department to extinguish the fire.

{¶9} While on the property, Sergeant Ezzo observed over 600 improperly stored tires. Sergeant Ezzo testified that junkyards can only have up to 100 tires on the property at any given time. The tires were not stacked properly, nor stored in a manner to prevent them from becoming wet. In addition, the building on the premises was dilapidated. When securing the property, the responding officers noticed a pile of scrap metal containing car parts with VIN numbers. It was later determined these car parts came from vehicles that were reported stolen.

{¶10} On cross-examination, Sergeant Ezzo testified that he was not aware whether anyone from the city health department, building department, environmental department, or the Ohio Environmental Protection Agency ("EPA") analyzed the material on Cooper's property. He further testified that he did not see the excavator in operation while he was on the property. Sergeant Ezzo further testified that the police department "took the excavator [he observed on Cooper's property] for possession of criminal tools."

He stated that the excavator was directly next to the dumpster and the pile of scrap that was the stolen car. In his experience, he has seen excavators used to take apart cars.

{¶11} Jennifer Carlin ("Inspector Carlin"), a solid waste inspector with the Ohio EPA, testified that she investigates complaints and regulates solid waste facilities in Cleveland. She testified that there is only one legally licensed solid waste facility or landfill in Cuyahoga County, operating out of the city of Brooklyn. Cooper's property is not registered as a licensed facility. She testified that "solid waste" is "any unwanted material resulting from commercial, industrial, agricultural, community operations. You know, an example would be tires, appliances, car parts, stuff along those lines."

{¶12} According to Inspector Carlin, in order to legally operate a facility as a landfill, one must first obtain a license. The Ohio Administrative Code outlines the criteria that need to be met in order to operate a legal facility. She described illegal use of the facility as the property owner dumping "any unwanted materials at a site, either open dump it where it's visible on the ground or they can bury it on the property as well." She did not inspect Cooper's property. The Ohio EPA and the health department have jurisdiction to inspect solid waste facilities.

{¶13} After the conclusion of the state's case, Cooper moved for acquittal under Crim.R. 29 on all counts. The trial court denied his motion and found Cooper guilty of all counts as charged in the indictment. Cooper was sentenced to an aggregate two-year community control sanctions in April 2015. The trial court found Cooper indigent, but ordered him to pay the costs of prosecution, supervision fees, and a $5,000 fine. The

court also ordered that the soil be tested to determine any hazardous conditions, with the court being advised of the results; Cooper keep the property free from garbage and debris; and Cooper not use the property as a junkyard or landfill. Cooper then appealed to this court in *State v. Cooper*, 8th Dist. Cuyahoga No. 103029. This appeal was dismissed for lack of a final appealable order because the court did not impose a sentence on every count of which it found Cooper guilty. Subsequently, Cooper was resentenced in January 2016.

{¶14} At the resentencing hearing, the trial court sentenced Cooper to two years in prison on Count 1 and a $10,000 fine, with $5,000 of the fine suspended, two years in prison on each of Counts 2 and 3, and six months in prison on each of Counts 4, 5, and 6. The court ordered that all counts be served concurrent to each other. The trial court suspended Cooper's prison sentence and ordered that he serve a two-year period of community control sanctions. The court further ordered that an environmental examination of the underlying soil of the property be completed, with the court being advised of the results; the property be kept free from garbage and debris; and the property not be used a junkyard or landfill. The court also ordered that Cooper pay community control supervision fees as well as court costs.

{¶15} Cooper now appeals, raising the following eight assignments of error for review, which shall be discussed together where appropriate.

<u>Assignment of Error One</u>

The trial court erred by failing to grant [Cooper's] motion for judgment of acquittal pursuant to Rule 29(A) Ohio Rules of Criminal Procedure when

the state failed to establish sufficient evidence of the elements of the distinct environmental crime of licenses and permits for solid waste facility and failed to establish compliance with the specific terms of the statute and compliance with the related administrative procedures and requirements which are elements of the offense of the unique compliance statute.

## Assignment of Error Two

The trial court erred by failing to grant [Cooper's] motion for judgment of acquittal pursuant to Rule 29(A) Ohio Rules of Criminal Procedure when the state failed to establish sufficient evidence of the elements of this distinct environmental crime of "open burning" and failed to establish compliance with the related administrative procedures and requirements which are elements of the offenses of this unique compliance statute.

## Assignment of Error Three

The trial court erred by failing to grant [Cooper's] motion for judgment of Acquittal pursuant to Rule 29(A) Ohio Rules of Criminal Procedure when the state failed to establish sufficient evidence of the elements of this distinct environmental crime of open dumping and failed to establish compliance with the related administrative procedure and requirement which are elements of the offense of this unique compliance statute.

## Assignment of Error Four

The trial court erred by failing to grant [Cooper's] motion for judgment of acquittal pursuant to Rule 29(A), Ohio Rules of Criminal Procedure as the state of Ohio failed to introduce sufficient evidence to support his conviction for the offense of possession of criminal tools.

## Assignment of Error Five

The trial court erred in issuing a vague, over-broad order that as a condition of his community control sanction, that [Cooper] was to conduct an environmental examination of the underlying soil of his property, pay for said environmental testing, and accomplish a clean up or remediation of the property when there was absolutely no evidence presented by the state to establish any contamination or need for environmental testing and clean up.

## Assignment of Error Six

The trial court erred by imposing an excessive $5,000.00 fine upon an indigent defendant, [Cooper], when there was no evidentiary basis showing need for the fine and the court made no determination regarding Cooper's ability to pay the fine.

## Assignment of Error Seven

The trial court erred by determining as part of [Cooper's] sentence that he was ordered to pay the costs associated with prosecution.

## Assignment of Error Eight

[Cooper's convictions] for the offenses of operation of unlicensed solid waste facility, open burning[,] and open dumping are contrary to the manifest weight of the evidence.

## Motion for Acquittal

{¶16} In the first, second, third, and fourth assignments of error, Cooper challenges the trial court's denial of his Crim.R. 29 motion for acquittal on the following convictions: failing to have a license and permit for a solid waste facility, open dumping, open burning, and possession of criminal tools.

**{¶17}** Under Crim.R. 29(A), a trial court "shall not order an entry of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978), syllabus. A motion for judgment of acquittal under Crim.R. 29 should only be granted where reasonable minds could not fail to find reasonable doubt. *State v. Apanovitch*, 33 Ohio St.3d 19, 23, 514 N.E.2d 394 (1987), citing *Bridgeman*.

**{¶18}** "The test an appellate court must apply in reviewing a challenge based on a denial of a motion for acquittal is the same as a challenge based on the sufficiency of the evidence to support a conviction. *See State v. Bell* (May 26, 1994), 8th Dist. [Cuyahoga] No. 65356, 1994 Ohio App. LEXIS 2291." *State v. Turner*, 8th Dist. Cuyahoga No. 88489, 2007-Ohio-5449, ¶ 72. The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d

259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶19} In Count 1, Cooper was convicted of failing to have a license and permit for solid waste facility in violation of R.C. 3734.05(A), which states in pertinent part:

> (1) Except as provided in divisions (A)(4), (8), and (9) of this section, no person shall operate or maintain a solid waste facility without a license issued under this division by the board of health of the health district in which the facility is located or by the director of environmental protection when the health district in which the facility is located is not on the approved list under section [R.C. 3734.08].[1]

{¶20} At the time of Cooper's convictions, "solid waste" was defined in R.C. 3734.01(E) to include "such unwanted residual solid or semisolid material as results from industrial, commercial, agricultural, and community operations, * * * and * * * is not limited to, garbage, scrap tires, combustible and noncombustible material, street dirt, and debris."   A "facility"was defined under R.C. 3734.01(N) to include

> any site, location, tract of land, installation, or building used for incineration, composting, sanitary landfilling, or other methods of disposal of solid wastes or, if the solid wastes consist of scrap tires, for the collection, storage, or processing of the solid wastes; for the transfer of solid wastes; for the treatment of infectious wastes; or for the storage, treatment, or disposal of hazardous waste.

{¶21} Cooper maintains that his conviction must fail because no inspection was completed by the EPA or its representative to determine if unlawful solid waste was on the property.   As a result, Cooper maintains that he did not operate a solid waste facility and he was not required to have a license.   We disagree.

---

[1]The exceptions referenced in R.C. 3734.05(A) do not apply to Cooper.

{¶22} In the instant case, testimony from Sergeant Ezzo and Inspector Kuffari described Cooper's property as having barrels with fires emitting from them, scrap automobiles, settling tanks, the wrecking of cars on the property, scrap metal containing automobile parts from stolen automobiles, a dumpster containing scrap metal, various car parts, and approximately 600 improperly stored tires. Sergeant Ezzo testified that Cooper admitted "he was just burning things to get rid of them" and that his property "was a junkyard." Inspector Kuffari testified that Cooper had no permits for any kind of auto or scrap salvage usage. In addition, Inspector Carlin testified at trial that there is only one legal landfill facility in Cuyahoga County, which is located in Brooklyn, Ohio.

{¶23} Based on the foregoing, we conclude any rational trier of fact could have found that Cooper operated or maintained a solid waste facility without a license. Therefore, it was not error for the trial court to deny his motion for acquittal on this charge.

{¶24} In Counts 2 and 3, Cooper was convicted of open burning and open dumping in violation of R.C. 3734.03, which provides in pertinent part:

> [n]o person shall dispose of solid wastes by open burning or open dumping, except as authorized by the director of environmental protection in rules adopted in accordance with division (V) of section 3734.01, section 3734.02, or sections 3734.70 to 3734.73 of the Revised Code[.][2]

"Open burning" is defined as

> the burning of solid wastes in an open area or burning of solid wastes in a type of chamber or vessel that is not approved or authorized in rules

---

[2]The exceptions referenced in R.C. 3734.03 do not apply to Cooper.

adopted by the director under [R.C. 3734.02] or, if the solid wastes consist of scrap tires, in rules adopted under division (V) of this section or section [R.C. 3734.73.]

R.C. 3734.01(H).   "Open dumping" is defined as

the depositing of solid wastes * * * onto the surface of the ground at a site that is not licensed as a solid waste facility under section [R.C. 3734.05] or, if the solid wastes consist of scrap tires, as a scrap tire collection, storage, monocell, monofill, or recovery facility under section [R.C. 3734.81]; the depositing of solid wastes that consist of scrap tires onto the surface of the ground at a site or in a manner not specifically identified in divisions [R.C. 3734.85(C)(2) to (5), (7), or (10).]

R.C. 3734.01(I).

{¶25} Here, Sergeant Ezzo testified that while on Cooper's property, he observed a 55-gallon drum that had painted wood debris burning inside of it, which appeared to be from a painted garage door.  In response to Sergeant Ezzo's inquiry about the fire, Cooper stated "he was just burning things to get rid of them."  Sergeant Ezzo also testified that despite the fact that junkyards can only have up to 100 tires at any given time, he observed over 600 improperly stored tires on the property.  These tires were not properly stacked, nor stored in a manner to prevent them from becoming wet.  Inspector Kuffari also observed a barrel with a fire burning in it and improperly stored tires when he visited Cooper's property

{¶26} Based on the foregoing, we conclude that any rational trier of fact could have found that Cooper illegally burned wood debris and improperly stored tires in direct contravention of R.C. 3734.03.  Therefore, it was not error for the trial court to deny his motion for acquittal on this charge.

**{¶27}** In Count 6, Cooper was convicted of possessing criminal tools in violation of R.C. 2923.24(A), which provides that "[n]o person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally."

**{¶28}** Cooper argues there was no evidence linking the excavator to any criminal conduct. However, Sergeant Ezzo testified that he noticed dismantled cars on Cooper's property. There was a Volvo and a gold car in pieces. The excavator was directly next to the dumpster and a pile of scrap that was determined to be from a stolen car. Sergeant Ezzo testified, that in his experience, he has seen excavators used to dismantle cars. Based on this testimony, a rational trier of fact could conclude the excavator was used criminally to dismantle the stolen vehicles found on Cooper's property. Therefore, it was not error for the trial court to deny his motion for acquittal on this charge.

**{¶29}** Accordingly, the first, second, third, and fourth assignments of error are overruled.

<u>Sentence — Community Control Sanction</u>

**{¶30}** In the fifth assignment of error, Cooper argues the trial court erred when it ordered him to pay for the testing of the soil on the property and pay for the cost of remediation. He contends that there is no evidence that the soil is contaminated; therefore, he cannot be ordered to pay a financial sanction not supported by the evidence.

**{¶31}** We review the trial court's imposition of community control sanctions for an abuse of discretion. *State v. Tally*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d

1201, ¶ 10.  "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'"  (Citations omitted.)  *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 404 N.E.2d 144 (1980).

{¶32} R.C. 2929.15(A) authorizes a court to impose financial sanctions, as well as any other conditions of release under a community control sanction that the court considers appropriate.  *Tally* at ¶ 10.  In *Tally*, the Ohio Supreme Court reiterated the test it set forth in *State v. Jones*, 49 Ohio St.3d 51, 550 N.E.2d 469 (1990), determining the reasonableness of community control conditions.  Under this test, courts must consider whether the condition

> "(1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation."[3]

*Tally* at ¶ 12, quoting *Jones* at 53.  We recognize the community control conditions "'cannot be overly broad so as to unnecessarily impinge upon the [offender's] liberty.'"  *Id.* at ¶ 13, quoting *Jones* at 52.

{¶33} In the instant case, Cooper was convicted of failing to have a license and permit for a solid waste facility, open dumping, and open burning.  Evidence presented

---

[3] In *Tally*, the Ohio Supreme Court clarified that "[b]ecause community control is the functional equivalent of probation, [prong (3)] applies with equal force to community-control sanctions."  *Id.* at ¶16.

during sentencing indicated that there were tires and scrap metal buried beneath the property in addition to the debris discovered on the surface of the property. Cooper also advised the court that his property was pending a sale and the buyer would be paying for the clean up costs.

{¶34} The court imposed community sanctions with the following conditions:[4]

THE COURT: [A]s long as the property is in your name — and at this time I want to make sure that whomever, if it's you or [the buyer], I want to make sure there is nothing hazardous underneath that soil. If that's the condition of [the buyer] before they buy it, I want the results brought to the probation department to verify that there are no problems there.

[COOPER]: No problem.

THE COURT: I want to keep continued compliance. I don't want to see any fire burning or tire storage there.

* * *

I want [the property] to be maintained until it's taken over and the sale is final.

{¶35} Considering that each of these conditions had some relationship to the crimes committed and serves the statutory ends of community control and the court did not impose vague or overbroad conditions, we conclude that the court did not abuse its discretion when imposing community control sanctions.

{¶36} Therefore, the fifth assignment of error is overruled.

---

[4]The trial court imposed the same community control conditions at both the initial sentencing and the resentencing hearing.

## Sentence — Fine

{¶37} In the sixth assignment of error, Cooper argues the court erred and abused its discretion by imposing a discretionary fine of $5,000. We note, however, that R.C. 3734.99 requires the imposition of a mandatory fine for violations of R.C. 3734.03 and R.C. 3734.05 in the amount of "at least ten thousand dollars, but not more than twenty-five thousand dollars[.]"

{¶38} At the resentencing hearing, Cooper stated to the trial court that he is indigent. He further stated that, "I've been looking for employment. I've been paying on my fines and no problems. I'm staying out of trouble." While Cooper indicated that he is indigent, he also indicated that he has been paying his own fines without any problems and submitted paid clean up receipts. The court imposed a mandatory fine of $10,000, but suspended $5,000 of the fine. In the absence of any evidence that Cooper was both indigent and unable to pay, we cannot say the trial court erred in imposing the fine.

{¶39} Accordingly, the sixth assignment of error is overruled.

## Sentence — Costs

{¶40} In the seventh assignment of error, Cooper argues the trial court erred when it ordered him to pay the costs associated with the prosecution of his case.

{¶41} In *State v. White*, 103 Ohio St.3d 580, 2004-Ohio-5989, 871 N.E.2d 393, the Ohio Supreme Court stated that "'[i]n all criminal cases * * * the judge or magistrate shall include in the sentence the costs of prosecution and render

a judgment against the defendant for such costs.'" *Id.* at ¶ 5, quoting R.C. 2947.23(A)(1). The court further stated that "R.C. 2947.23 does not prohibit a court from assessing costs against an indigent defendant; rather it *requires* a court to assess costs against all convicted defendants." (Emphasis sic.) *White* at ¶ 8. Therefore, a "defendant's financial status is irrelevant to the imposition of court costs." *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 3.

{¶42} In order to waive court costs, an indigent defendant must move the court during the sentencing hearing. *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 23. The issue is then preserved for appeal and will be reviewed under an abuse of discretion standard. *Id.* Here, Cooper objected to the imposition of prosecution costs, but did not specifically move the court to waive the costs. Cooper indicated to the court that he has been paying his own fines without any problems and submitted receipts he had paid to clean up his property. Based on the foregoing, we decline to find the court abused its discretion.

{¶43} Therefore, the seventh assignment of error is overruled.

Administrative Compliance and Manifest Weight of the Evidence

**{¶44}** Cooper argues that the state of Ohio ("State") failed to comply with the administrative provisions, which are interwoven with the statutory provisions, to establish the elements of the offenses charged. This argument is discussed prior to Cooper's assigned errors and in the eighth assignment of error, in which he argues that his convictions for failing to have a license and permit for a solid waste facility, open dumping, and open burning are against the manifest weight of the evidence.

**{¶45}** A manifest weight challenge questions whether the prosecution met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13, citing *Thompkins*, 78 Ohio St.3d at 390, 1997-Ohio-52, 678 N.E.2d 541. The Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendants? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*Thompkins* at 387], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶46}** Cooper claims the "trial court lost its way" because the court did not comprehend that "these environmental crimes are not Chapter 29 offenses." He contends that, prior to bringing criminal charges, the state had to comply with the Ohio Administrative Code and involve the Ohio EPA.

{¶47} When establishing the material elements of a criminal violation under R.C. Chapter 3734, we note that the provisions of the Ohio Administrative Code are not law, but merely supplements to the Revised Code. *N. Ohioans Protecting the Environment v. Shank*, 52 Ohio App.3d 41, 43, 557 N.E.2d 126 (10th Dist.1988). In the instant case, Cooper was charged with the following environmental violations, which are unclassified felonies: failing to have a license and permit for a solid waste facility in violation of R.C. 3734.05(A) and open burning and open dumping, both in violation of R.C. 3734.03. While both statutes reference the Ohio EPA, neither of these statutes require the state, in this instance, to first pursue remedies through the Ohio Administrative Code as Cooper contends. Indeed, "[t]he authority of the Environmental Protection Agency to license, supervise, inspect, and regulate hazardous waste facilities does not preclude municipalities from enacting police power ordinances[,] which do not conflict with that authority." *Fondessy Ent., Inc. v. Oregon*, 23 Ohio St.3d 213, 492 N.E.2d 797 (1986), at paragraph four of the syllabus.

{¶48} Furthermore, R.C. 3734.10 provides the state with the power to criminally prosecute "any person who has violated, is violating, or is threatening to violate any section of this chapter[.]" Thus, the state was within its authority to prosecute this case. *See State v. Hilleary*, 2d Dist. Montgomery No. 26426, 2015-Ohio-2782 (defendant's open dumping conviction was affirmed on appeal where the evidence demonstrated that an environmental enforcement officer investigated a complaint concerning scrap tires and

the state brought open dumping charges against defendant in violation of R.C. 3734.03, without the EPA's involvement.)

**{¶49}** Accordingly, the eighth assignment of error is overruled.

**{¶50}** Judgment is affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_____
MARY EILEEN KILBANE, PRESIDING JUDGE

MARY J. BOYLE, J., and
FRANK D. CELEBREZZE, JR., J., CONCUR