[Cite as *Cleveland v. Cornely*, 2021-Ohio-689.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

CITY OF CLEVELAND,

     Plaintiff-Appellee,      :

                                  No. 109556

     v.                      :

JOHN P. CORNELY,          :

     Defendant-Appellant.     :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** REVERSED AND REMANDED
**RELEASED AND JOURNALIZED:** March 11, 2021

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 18-CRB-017558

---

### *Appearances:*

Barbara A. Langhenry, Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecuting Attorney, Thomas A. Fisher, Assistant Prosecuting Attorney, and Stephanie B. Scalise, City Prosecutor, City of University Heights, as Special Prosecutor for the City of Cleveland, *for appellee.*

Jay F. Crook, Attorney at Law, L.L.C., and Jay F. Crook, *for appellant.*

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant, John P. Cornely ("Cornely"), appeals the trial court's denial of his motion to terminate or in the alternative to modify the no-

contact order, to allow visitation with his children. We find the indefinite disallowance of parental visitation, as a condition of community control, does not bear some relationship to the crime for which he was convicted and unreasonably restricts Cornely's contact with his children. In this case, we also find that this condition is not reasonably related to the goals of community control, therefore we reverse the trial court's indefinite no-contact order as it relates to this condition.

## **Facts and Procedural History**

{¶ 2} On October 1, 2018, the city of Cleveland ("the City") charged Cornely with one count of domestic violence against his wife and two counts of endangering his children.[1] These charges stemmed from an incident that occurred on September 30, 2018, at the parties' marital residence. At the time, Cornely had been arguing with his wife over a trip she was planning to take with their ten-year-old daughter. During the argument, his wife walked into the kitchen, Cornely followed and shattered a plate of food on the floor.

{¶ 3} The parties' 12-year-old son entered the kitchen and picked up a knife, ostensibly to defend his mother. His ten-year-old sister also entered the kitchen and began yelling at their father. Cornely took the knife away from his son and ordered both children to leave the kitchen. Both children left the kitchen. Cornely then pushed his wife against a wall, spat on her multiple times, while calling

---

[1] At the time of this incident, Cornely had an open case in the Cleveland Municipal Court for operating a vehicle under while the influence of alcohol. Cornely subsequently pled guilty and did not appeal his conviction.

her a slut and a whore. Cornely proceeded to shove his wife, who landed on a table, then fell to the ground, where she hit her head.

{¶ 4} At the arraignment, on October 2, 2018, the trial court issued a temporary protection order ("TPO") with the condition that Cornely have no contact with his wife and children. Cornely was given a personal bond and fitted with a GPS monitoring device. On October 11, 2018, Cornely filed a motion to modify the condition of his bond to specifically lift the TPO as it related to the no-contact order with the children. In the motion, Cornely argued he had not caused any harm to his children, that he was very involved in their daily activities, coached their sport teams, took them back and forth to school, and assisted with their homework.

{¶ 5} On January 22, 2019, Cornely pled guilty to the single count of domestic violence and the City dismissed the remaining two counts of endangering children. On February 19, 2019, the trial court imposed a fine of $100 and sentenced Cornely to 180 days in jail, with 180 days suspended, upon the completion of three years of community control sanctions. The conditions of community control included completing the Domestic Education Intervention Training and sixty hours of community service by February 19, 2020. The trial court also ordered that the original no-contact order remain in effect until further order of the court.

{¶ 6} On April 9, 2019, the City filed a motion captioned: "Motion to Modify Journal Entry" and requested that the court set the matter for a hearing. The City did not attach a memorandum in support, but only indicated the motion was in reference to the no-contact order. In response to the City's motion, Cornely

indicated that he was compliant with all imposed community control conditions and reiterated that he had no previous incidents with his minor children. Cornely again noted that he was not convicted of any criminal offense against the children.

{¶ 7} In addition, Cornely indicated that he and his wife had since instituted divorce proceedings in the domestic relations division of the common pleas court, where issues relating to custody of and visitation with the children were being addressed. Cornely further indicated that the children were regularly seeing a counselor, who noted that prior to this incident, Cornely had positive contact with his children and who also encouraged that this positive contact continue.

{¶ 8} On May 14, 2019, at the outset of the hearing on the City's motion to modify the journal entry, the prosecuting attorney offered that there was a discrepancy concerning the no-contact order at the time the community control sanctions were imposed. After an off-the-record sidebar, the trial court stated that the children were included in the order, because Cornely had been charged with child endangering. The trial court later issued a journal entry stating: "No contact w/ ALL VICTIMS, children included — until approved by court." (Emphasis sic.) Journal Entry May 14, 2019.

{¶ 9} On February 13, 2020, Cornely filed a motion to terminate or in the alternative to modify the no-contact order to allow visitation with his children. On that same date, Jonathan Wilbur ("Wilbur"), the duly appointed guardian ad litem and legal counsel for Cornely's minor children, also filed a motion to terminate or in

the alternative to modify the no-contact order to allow Cornely visitation with his children.

{¶ 10} In the motion, Wilbur attached his affidavit in support, in which he averred, among other things, that he had interviewed the minor children on several occasions and had been informed of their desire to see and visit with their father; that the children had verbalized that they were not in fear of their father and did not feel unsafe in their father's presence; and that the mother of the minor children had represented to him on multiple occasions that she did not believe Cornely posed any threat to the children.

{¶ 11} Wilbur also averred that since the inception of the no-contact order, the lives of the children had been negatively impacted by the indefinite removal of their father from their lives. Wilbur averred that he had come to this conclusion following a comprehensive investigation that included multiple meetings with the children and obtaining their wishes and conversations with Cornely's probation officer, who previously reported that Cornely was exceptionally compliant and, who also recommended that Cornely be placed on an inactive probationary status.

{¶ 12} In addition, Wilbur averred that he had come to this conclusion based upon discussions with the children's therapist, who was in support of reunification, and who agreed to facilitate the initial visits between Cornely and the children; communications with Cornely's psychiatric provider, at University Hospitals, who wrote that Cornely "ha[d] been compliant with medication treatment * * * and his mental health ha[d] improved with treatment"; corresponding with Cornely's

therapist, at Catholic Charities, who advised that Cornely has been verbal, open, and insightful during his sessions and was utilizing effective coping skills; multiple meetings and conversations with the children's mother; and observing contradictory behavior on the part of the children's mother, such as going to Cornely's home on the evening of December 30, 2019.

{¶ 13} Further, Wilbur averred that in August 2019, the parties willingly executed an agreed judgment entry ("AJE"), adopted by the domestic relations judge, which outlined visitation for Cornely and the children. According to the terms of the AJE, supervised visitation would commence upon the dissolution of the indefinite no-contact order as it related to the children. According to the AJE, Cornely's wife agreed to support a request for the modification of the no-contact order, so that the minor children would be able to visit with their father.

{¶ 14} The City did not file a response to either Cornely's motion or to the motion filed by the GAL on behalf of the children. On February 19, 2020, without any opposition to, or rebuttal of, the information presented, the trial court denied the respective motions without a hearing. On February 28, 2020, Cornely filed his notice of appeal.[2]

---

[2] On May 18, 2020, during the pendency of this matter on appeal, Cornely filed a motion for stay in the underlying case. When the trial court did not rule on the motion for stay, Cornely filed a motion for stay of the no-contact order in this court. Based on App.R. 8(B), which provides that appellant's application for stay "shall be made in the first instance in the trial court," we denied the motion noting that the motion for stay was still before the trial court. On July 15, 2020, Cornely filed a procedendo action against the trial court to compel it to rule on the motion for stay, filed May 18, 2020. On September 4, 2020, in *State ex rel. Cornely v. McCall*, 8th Dist. Cuyahoga No. 109832,

{¶ 15} Cornely assigns the following four errors for review:

### Assignment of Error One

The trial court committed plain and reversible error in designating Mr. Cornely's children as victims of the charge of domestic violence, the only charge for which he was convicted.

### Assignment of Error Two

The trial court's modification of the no contact order in both length and scope was an impermissible use of the court's nunc pro tunc power.

### Assignment of Error Three

The trial court violated Ohio law and appellant's due process rights by modifying his sentence without any allegation or finding that defendant had violated the terms of his community control sanction.

### Assignment of Error Four

The trial court erred and abused its discretion in maintaining a previously imposed condition of community control that appellant have no contact with his minor children.

## **Law and Analysis**

{¶ 16} Collectively, Cornely's assignments of error argue the trial court's inclusion of the children in the no-contact order as a condition of his probation was an abuse of discretion. Because of their common basis in fact and law, we will address these assignments of error together.

{¶ 17} We review the trial court's imposition of community control sanctions for an abuse of discretion. *Cleveland v. Pentagon Realty, L.L.C.*, 8th Dist. Cuyahoga No. 108146, 2019-Ohio-3775, citing *State v. Cooper*, 2016-Ohio-8048, 75 N.E.3d

---

2020-Ohio-4384, we issued the writ of procedendo and ordered the respondent judge to rule on Cornely's May 18, 2020 motion for stay.

805, ¶ 31 (8th Dist.), citing *State v. Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, ¶ 10.  An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable.  *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980). Although a trial court is granted broad discretion in imposing community control sanctions, the trial court's discretion "is not limitless." *State v. White*, 10th Dist. Franklin No. 14AP-1027, 2015-Ohio-3844, ¶ 5, citing *Talty* at ¶ 11.

{¶ 18} The Ohio Supreme Court has held that in determining whether a condition of probation is related to the interests of doing justice, rehabilitating the offender, and ensuring his good behavior, courts should consider "whether the condition (1) is reasonably related to rehabilitating the offender, (2) has some relationship to the crime of which the offender was convicted, and (3) relates to conduct which is criminal or reasonably related to future criminality and serves the statutory ends of probation." *State v. Jones*, 49 Ohio St.3d 51, 53, 550 N.E.2d 469 (1990).[3]   All three conditions must be satisfied for the reviewing court to find that the trial court did not abuse its discretion.   *Solon*, 8th Dist. Cuyahoga No. 107043, 2018-Ohio-4900, ¶ 8, citing *White* at ¶ 10.  Further, the conditions "cannot be overly broad so as to unnecessarily impinge upon the probationer's liberty." *Talty* at ¶ 13, quoting *Jones* at 52.

---

[3] *State v. Jones* applied to probation under former R.C. 2951.02; however, Ohio courts have applied this test to community control sanctions under the current statutory scheme.  *See State v. Cooper*, 2016-Ohio-8048, 75 N.E.3d 805, ¶ 31 (8th Dist.).

{¶ 19} The gravamen of Cornely's arguments is that the community control condition that indefinitely restricts his parental rights does not pass the three-prong test as applied in *Jones* and should not be upheld.

{¶ 20} As we observed in the *Lakewood v. Radostitz*, 8th Dist. Cuyahoga No. 105620, 2018-Ohio-1971, courts have found the trial court abused its discretion where it imposed no-contact conditions of community control that fail the *Jones* test. *See, e.g., Univ. Hts. v. Roders*, 8th Dist. Cuyahoga No. 76252, 1999 Ohio App. LEXIS 3862 (Aug. 19, 1999) (community control condition prohibiting the appellant from contacting his wife or their children is not related to the crime of telephone harassment of the police department, because the wife and children were not victims of the crime, and prohibiting appellant from contacting the wife and children will not prevent future harassing phone calls to the police); *State v. Marcum*, 4th Dist. Hocking Nos. 11CA8 and 11CA10, 2012-Ohio-572 (the condition that wife have no contact with husband is not reasonably related to rehabilitating the wife who was convicted of misuse of 911 because the condition fails to ensure that she only use 911 for legitimate purposes); *State v. Brillhart*, 129 Ohio App.3d 180, 717 N.E.2d 413 (9th Dist.1998) (the condition that defendant not see his children for two years when he was convicted of domestic violence against his wife is unrelated to the particular crime of which he was convicted).

{¶ 21} We find the same observation pertains to this case. Although the parties' two children were present, one of whom took up a knife, which Cornely

immediately took away from that child before instructing both children to leave the kitchen, we have previously held that:

> "[s]imply because the two children were present in the home at the time of the altercation, may have witnessed part of the dispute and may have been (understandably) upset or confused by their parents' words and actions does not establish that Cohen violated a duty of care, protection or support to his children or that he, with heedless indifference to the consequences of his actions, perversely disregarded a known risk and thereby created a substantial risk to the health or safety of his children. *City of Cleveland Hts. v. Cohen*, 8th Dist. Cuyahoga No. 2015-Ohio-1636, ¶ 30. *See, also, State v. Jackson-Williams*, 8th Dist. Cuyahoga No. 2020-Ohio-1118, ¶ 33.

*Cohen* at ¶ 30.

{¶ 22} We acknowledge the trial court's underlying concerns. The trial court could fashion conditions that included the children. The conditions should be reasonable, appropriate, and have a definite duration. Here, arguably, Cornely could be denied access to his children for the entire three years of his probation. Fashioning conditions that resulted in the indefinite separation of a father from his young children was not reasonable or appropriate under the circumstances. The imposed indefinite condition is not reasonably related to future criminality nor does it serve the statutory ends of probation, which are justice, rehabilitation, and ensuring the offender's good behavior. R.C. 2951.02(C)(1)(a); *Radostitz*, 8th Dist. Cuyahoga No. 105620, 2018-Ohio-197.

{¶ 23} After the trial court imposed the indefinite separation of father from children, Cornely presented information via a motion in opposition to the City's motion to modify the journal entry and his subsequent motion to modify as well as

through the GAL's motion to modify. Importantly, among the information provided was the AJE that Cornely and his wife willingly executed, as part of divorce proceedings, which outlined visitation for Cornely and the children.

{¶ 24} Our review of the AJE reveals a comprehensive document that methodically laid out a multistep reunification plan for Cornely and the children. Our review also reveals that the document provides more than adequate oversight and protection for the children during reunification with their father. Noteworthy, the AJE reveals that the children's mother agreed to support a request for the modification of the no-contact order, so that the minor children would be able to visit with their father.

{¶ 25} The additional information presented, not only from Cornely, but from third-party professionals, whom are both sworn to act in the best interest of the children, weighed heavily in favor of modifying the conditions the trial court deemed appropriate at the outset. Although the additional information tipped the scales considerably in favor of not maintaining the status quo, the trial court failed to reassess the need for maintaining the condition, which separated the father from the children.

{¶ 26} We find the imposed indefinite condition, though seemingly well-intentioned, designed to both rehabilitate and protect society, is not reasonable or appropriate and therefore falls short on the *Jones* three-prong test. The resultant indefinite separation of father from children also impinges upon the "fundamental liberty interest" parents have in the care, custody, and management of their

children.  *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

{¶ 27} Consequently, we are constrained to find that the trial court abused its discretion in imposing, and later denying, the motion to modify the indefinite condition.  In so finding, we are cognizant of a trial court's desire, when fashioning community control sanctions, to strike the proper balance in protecting the parties involved.  Nonetheless, we find nothing in the record that would support the indefinite no-contact order, which has now separated a once totally involved father from his children for more than two years.

{¶ 28} Accordingly, we sustain the central theme of Cornely's arguments and find the indefinite no-contact order, concerning the children, invalid and vacate that portion of the trial court's sentencing order.  *See Talty*, 103 Ohio St.3d 177, 2004-Ohio-4888, 814 N.E.2d 1201, at ¶ 25 (a finding that one of the conditions of community control is invalid does not affect the validity of the other conditions).

{¶ 29} Judgment reversed and remanded to the lower court to vacate the indefinite community control condition prescribing that Cornely have no contact with his children.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____ _____
EMANUELLA D. GROVES, JUDGE

ANITA LASTER MAYS, P.J., and
LARRY A. JONES, SR., J., CONCUR