[Cite as *In re A.B.*, 2021-Ohio-4613.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE A.B., ET AL.          :
                          :      No. 110145

Minor Children            :

                          :

[Appeal by S.B., Mother]   :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED**: December 30, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD-19901829, AD-19901830, and AD-19901831

---

### *Appearances:*

Rachel A. Kopec, *for appellant.*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Joseph C. Young, Assistant Prosecuting Attorney, *for appellee.*

EMANUELLA D. GROVES, J.:

{¶ 1} Appellant-mother ("Mother"), S.B., appeals from the judgment of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that granted legal custody of her children A.B. (d.o.b. 1/31/2012), X.B. (d.o.b. 2/3/2015), and P.B. (d.o.b. 7/17/2016) to appellee-father ("Father"), L.A. For the reasons set forth below, we affirm the award of legal custody to Father.

## Procedural History

{¶ 2} On February 1, 2019, city of Cleveland firefighters responded to Mother's address on a report of a fire. On arrival, firefighters found Mother; another adult; Mother's three youngest children, A.B., X.B., and P.B.; and Mother's two oldest children, I.B. (d.o.b. 3/20/2008) and K.B. (d.o.b. 8/20/2009).[1]

{¶ 3} Mother admitted that she left her five children in the care of a 12-year-old family friend. Investigators learned that one of the younger children was playing with a lighter and accidently set fire to a pile of clothes. None of the children were injured during the fire.

{¶ 4} Mother had previously been involved with the Cuyahoga County Division of Children and Family Services (the "agency" or "CCDCFS") and had an open case when the fire occurred. The children had previously been removed from Mother's custody in 2015 but had been returned to her in 2018 with protective supervision. Protective supervision was terminated in August 2018; however, the case remained open to ensure family stability. While typically agency involvement ceases after 90 days, the agency remained involved with the family due to the children's' multiple absences from school. I.M. had missed 23 days, K.B. had missed 27 days, and A.B. had missed 69 days.

{¶ 5} On February 5, 2019, the agency held a "staffing." As a result, a safety plan was developed where Mother's sister, S.F., would spend time in the home to

---

[1] Father is the father of A.B., X.B., and P.B. Siblings I.B. and K.B. are not the subject of this appeal, and their status will only be referenced as needed.

support Mother. On February 13, 2019, the agency learned that S.F. was not providing the support as anticipated. On February 14, 2019, the agency filed a complaint alleging neglect, dependency, and abuse and a motion requesting predispositional temporary custody of Mother's five children.

{¶ 6} On February 14, 2019, the juvenile court held a hearing on the agency's motion for predispositional temporary custody. The juvenile court granted the motion. A.B., X.B., and P.B. were placed in a certified approved relative placement with Father's mother, the children's paternal grandmother, A.A.[2] On March 4, 2019, the agency amended its complaint from a request for temporary custody to a request for permanent custody of the children.

{¶ 7} On July 3, 2019, Father filed a motion for legal custody of A.B., X.B., and P.B. He argued that he had stable housing and was in a position to take legal custody.

{¶ 8} On July 16, 2019, CCDCFS removed A.B. from paternal grandmother's home due to severe behaviors. A.B. was assaultive towards his siblings and agency staff during visits. He was placed in a residential facility deemed more capable of dealing with his issues.

{¶ 9} On July 25, 2019, Father filed a motion for predispositional temporary custody of A.B., arguing that the restrictions placed on A.B. in the residential facility were causing A.B. immediate psychological harm.

---

[2] I.B. and K.B. were placed in foster care.

{¶ 10} On August 6, 2019, Mother filed a motion for termination of temporary custody and placement of the children with her.

{¶ 11} On September 6, 2019, the juvenile court held an adjudicatory hearing. The parties agreed to an amended complaint and to a finding that the children were neglected. A.B., X.B., and P.B. were removed from paternal grandmother's custody and placed in the predispositional temporary custody of Father. At that time, Father was residing in a six-bedroom home with the children's paternal great-grandmother and paternal great-uncle.

{¶ 12} On November 1, 2019, the agency filed a motion to amend its dispositional prayer from permanent custody to the agency to temporary custody to the agency. The agency acknowledged that Father had temporary custody but noted that he had recently been charged with a drug offense. The agency asked for temporary custody to allow Father to deal with his ongoing criminal issues. On November 8, 2019, the juvenile court held a hearing and determined that predispositional temporary custody would remain with Father for the time being.

{¶ 13} On January 9, 2020, Mother filed a motion for legal custody of the children. On March 4, 2020, the agency filed to amend its dispositional request from temporary custody to the agency, to temporary custody to Father for A.B., X.B., and P.B. On March 15, 2020, the agency filed for first extension of temporary custody of the children to Father.

{¶ 14} On March 17, 2020, the juvenile court held a dispositional hearing. The juvenile court granted the agency's motion giving temporary custody of A.B.,

X.B., and P.B. to Father. Furthermore, the juvenile court granted the agency's motion for first extension of temporary custody to Father until August 14, 2020. The juvenile court indicated it would review the parties' respective motions for custody in six months.

{¶ 15} Mother's case plan called for her to 1) obtain a drug and alcohol assessment and follow any recommendations; 2) complete a psychological evaluation and follow any treatment recommendations; 3) complete recommended parenting education; 4) provide a stable, safe, structured home for the children; 5) engage in family preservation services; and 6) complete a domestic violence assessment and follow any recommendations.

{¶ 16} Father's case plan called for him to 1) obtain a drug and alcohol assessment and follow any recommendations; and 2) provide a stable, safe, structured home for the children.

{¶ 17} On July 21, 2020, the agency filed a motion to modify temporary custody of A.B., X.B., and P.B. to legal custody to Father. On July 22, 2020, the juvenile court held a telephone conference to review the parents' progress. At that time, Nakia Burks-Cothran ("Burks-Cothran"), the social worker assigned to the case, testified. Father was not present for the call, but Burks-Cothran spoke to him prior to the hearing. Burks-Cothran reported that A.B., X.B., and P.B. were doing well in Father's home.

{¶ 18} Burks-Cothran further reported that Mother was progressing on her case plan. Mother had been terminated from parenting education due to issues with

her phone and inconsistent attendance. The agency addressed the issue by referring her to parenting education a second time. Mother completed the alcohol and drug assessment that had no further recommendations. Mother also completed the psychological evaluation that recommended medication and counseling. Mother had a two-bedroom apartment but indicated she was eligible for a larger space should she regain custody of the children.

{¶ 19} Mother disagreed with the agency's request for legal custody to Father for A.B., X.B., and P.B., stating he was a hard man to deal with. She described him as aggressive. Mother further noted that he sold drugs and never worked and that she did not want her children in that environment. She also alleged that Father frequently left the children in the care of their 97-year-old great grandmother. Mother believed she was a more stable placement. The juvenile court continued the case for further review.

{¶ 20} On October 22, 2020, the juvenile court held a dispositional hearing on the motions for legal custody of the children. Burks-Cothran testified that Father had custody of A.B., X.B., and P.B. since September 2019 and they were doing well in his care. Father had completed his case plan objectives by completing an alcohol and drug assessment. He had completed recommended out-patient treatment as well. The agency did not have concerns about substance abuse. Father also maintained stable housing.

{¶ 21} Burks-Cothran testified that Mother had completed the alcohol and drug portion of her case plan. Burks-Cothran testified that Mother reported she was

doing ongoing work with her mental health by engaging in medication management and doing individual counseling. However, Burks-Cothran was unable to verify Mother's progress because Mother refused to sign a release of information.

{¶ 22} Burks-Cothran testified that Mother was participating in parent education with an anticipated completion date of December 2020. Mother had not completed the family counseling aspect of the case plan, but that condition was dependent on Mother regaining custody. Mother reported in July that she had new housing; however, Mother refused to allow a home visit when Burks-Cothran requested one. Burks-Cothran testified that Mother indicated she completed the domestic violence assessment and recommendations; however, Mother did not provide documentation to support that contention. Further, Mother had open visits with the children and could see them whenever she wished.

{¶ 23} Burks-Cothran recommended that custody remain with Father as the children had been with him over a year with no issues. She noted that Father had completed his case plan objectives and that the children were well bonded with him. Burks-Cothran also spoke to A.B. and X.B. about their preferences. A.B. was adamant about staying with Father and did not wish to return to Mother's care. X.B. also wished to remain with Father.

{¶ 24} Pamela Hawkins, the guardian ad litem for the children ("Hawkins" or "GAL"), gave an oral report. She supported legal custody to Father. Hawkins spoke to the children, and they all wished to remain with Father.

**{¶ 25}** The juvenile court granted the agency's motion and gave legal custody of A.B., X.B., and P.B. to Father.

**{¶ 26}** Mother appeals and assigns the following error for our review:

### Assignment of Error

The trial court abused its discretion when committing the minor children to the legal custody of Father when it was in their best interest to be reunified with their Mother.

**{¶ 27}** In her sole assignment of error, Mother argues that the juvenile court abused its discretion in finding that custody to Father was in the children's best interest.

**{¶ 28}** Because "'custody issues are some of the most difficult and agonizing decisions a trial judge must make,'" a juvenile court is entitled to broad discretion in custody proceedings. *In re E.A.*, 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, ¶ 10, quoting *Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 674 N.E.2d 1159 (1997). Therefore, when reviewing a juvenile court's grant of legal custody, we will not disturb that decision unless we find an abuse of discretion. *Id.,* citing *Miller v. Miller*, 37 Ohio St.3d 71, 74, 523 N.E.2d 846 (1988). "An abuse of discretion connotes a decision that is unreasonable, arbitrary, or unconscionable." *Cleveland v. Cornely*, 8th Dist. Cuyahoga No. 109556, 2021-Ohio-689, ¶ 17, citing *State v. Adams*, 62 Ohio St.2d 151, 157, 404 N.E.2d 144 (1980).

**{¶ 29}** "Parents have a constitutionally protected interest in raising their children." *In re N.N.*, 8th Dist. Cuyahoga No. 110443, 2021-Ohio-3931, ¶ 16, citing *In re M.J.M.,* 8th Dist. Cuyahoga No. 94130, 2010-Ohio-1674, ¶ 15. However, this

"interest * * * is '"always subject to the ultimate welfare of the child."'"  *Id.,* quoting *In re M.J.M.*, quoting *In re B.L.*, 10th Dist. Franklin No. 04AP-1108, 2005-Ohio-1151, ¶ 7.  As in permanent custody cases, the most important consideration is what is in the best interest of the child when determining custody.  *Id.* at ¶ 17 , citing *In re M.J.M.* at ¶ 14.

{¶ 30} Legal custody is different from the termination of parental rights because "despite losing legal custody of a child, the parent of the child retains residual parental rights, privileges and responsibilities."  *In re N.N.* at ¶ 19, citing *In re G.M.*, 8th Dist. Cuyahoga No. 95410, 2011-Ohio-4090, ¶ 14.  A parent also retains the right to regain custody of their children.  *Id.* at ¶ 19, citing *In re M.J.M.* at ¶ 12.  Consequently, when determining whether to grant legal custody, the juvenile court makes its decision based on the preponderance of the evidence standard.  *Id.,* at ¶ 19, citing *In re M.J.M.* at ¶ 9.  "'"Preponderance of the evidence'" means '"evidence that's more probable, more persuasive, or of greater probative value."'"  *In re C.V.M.*, 8th Dist. Cuyahoga No. 98340, 2012-Ohio-5514, ¶ 7, quoting *In re D.P.,* 10th Dist. Franklin No. 05AP-117, 2005-Ohio-5097, ¶ 52, quoting *State v. Finkes*, 10th Dist. Franklin No. 01AP-310, 2002-Ohio-1439.

{¶ 31} However, unlike when the agency seeks permanent custody, the legal custody statute "R.C. 2151.353 (A)(3) does not provide factors the court should consider in determining the child's best interest."  *In re N.N.* at ¶ 20, citing *In re G.M.* at ¶ 15.  This court has previously found that "in the absence of best interest factors in a legal custody case, 'the legislature did not intend to require the

consideration of certain factors as a predicate for granting legal custody.'" *Id.,* quoting *In re G.M.* at ¶ 16.[3] However, the best interest factors under R.C. 2151.414(D) are instructive in determining what is in the best interest of the child. *Id.,* citing *In re E.A.,* 8th Dist. Cuyahoga No. 99065, 2013-Ohio-1193, at ¶ 13.

{¶ 32} R.C. 2151.414(D) includes, but is not limited to, the following factors in determining the best interest of the child: 1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, and other people who may significantly affect the child; 2) the child's wishes for placement; 3) the child's custodial history; and 4) the child's need for a legally secure permanent placement.

{¶ 33} In the case at hand, Mother argues that the trial court erred in awarding legal custody to Father due to her history of being the primary caregiver for the children, her substantial completion of case plan objectives, and because Father is not supportive of Mother's involvement with the children.

{¶ 34} While Mother had made significant progress on her case plan, as of the dispositional hearing over a year after Father took custody, Mother had not completed case plan objectives. Additionally, Mother actively blocked the social worker's attempts to ascertain her completion of goals. Furthermore, Hawkins, the GAL, was in favor of the three youngest children remaining with Father. Moreover, the children expressed a desire to remain with Father.

---

[3]*See also* R.C. 4151.42(A): "At any hearing in which a court is asked to modify or terminate an order of disposition issued under section 2151.353, 2151.415, or 2151.417 of the Revised Code, the court, in determining whether to return the child to the child's parents, shall consider whether it is in the best interest of the child."

{¶ 35} With regard to Mother's argument that Father was not supportive of Mother's involvement, conflicting testimony was presented on that issue. On the one hand, Mother argued that Father did not allow her to visit the children; on the other hand, she argued that Father allowed her to have the children for a couple of weeks at a time. Furthermore, there was an alleged outburst outside of the courtroom between Mother and Father, in which Mother's lawyer claimed that Father said he would not allow her to see the children ever. However, no testimony was taken regarding this incident. A review of the record fails to support Mother's argument that Father did not support her involvement with the children. Mother has not presented any evidence that placement with Father was detrimental to the children or against their best interest.

{¶ 36} The trial court's decision was supported by a preponderance of the evidence and was not against the manifest weight of the evidence. Therefore, we find that the trial court's award of legal custody to Father was in the best interest of the children and was not an abuse of discretion.

{¶ 37} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA D. GROVES, JUDGE

MARY J. BOYLE, A.J., and
SEAN C. GALLAGHER, J., CONCUR